[Crim. No. 4689.   In Bank.   Apr. 2, 1946.]

In re EDSEL G. RALPH, on Habeas Corpus.

Edsel G. Ralph, in pro. per., and Roy Daily for Petitioner.

Robert W. Kenny, Attorney General, Frank Richards and David K. Lener, Deputies Attorney General, Fred N. Howser, District Attorney, and John Barnes, Deputy District Attorney, for Respondent.

SCHAUER J.—Edsel G. Ralph, petitioner herein, in two consolidated cases pleaded guilty to charges of committing robbery while armed with a deadly weapon. Thereupon the court "Upon a statement of facts and by stipulation of counsel" found the crimes to be robberies of the first degree; denied defendant's application for probation as well as his motion, made under the provisions of the Youth Authority Act (Welf. & Inst. Code, §§ 1700-1783), to be certified to the Youth Authority pursuant to the terms of section 1731.5 of the act; arraigned defendant for judgment; pronounced judgment; sentenced defendant to imprisonment in the state prison for the term prescribed by law (Pen. Code, § 1168) and committed him to the custody of the prison warden. From the judgment of conviction and sentence against him defendant appealed, advancing as his sole contention that the trial court erred in refusing to commit him to the Youth Authority and in committing him directly to the custody of the warden of the state prison. He did not attack the judgment adjudicating his guilt of the charges of robbery and that the offenses were robberies of the first degree, or the sentence to imprisonment for the indeterminate term prescribed by law, except as such sentence specifically prescribed incarceration in the state prison in the custody of the warden instead of commitment to the custody of the Youth Authority. In other words, his whole contention on the appeal related not to the legality of the judgment of conviction or to the sentence of imprisonment as such but only to the identity of the penal authority into whose custody he should be committed. On the judgment and sentence to imprisonment he sought commitment to the custody of the Youth Authority instead of to the warden of the prison. This court, concluding that a liberal interpretation of the Youth Authority Act, as intended by the Legislature (Welf. & Inst. Code, § 1700), required that defendant's contention be sustained, on July 21, 1944, reversed the judgment *of commitment to the state prison* only and remanded the cause to the trial court, with directions to grant defendant's motion for certification to the Youth Authority.

In making the mentioned order we specifically pointed out that "The conclusion that these defendants are entitled to be *certified to* the Authority obviously does not mean that the Authority must accept them or that they are entitled to remain under it. Those are questions which the administrators

of the act must determine, in the exercise of a sound discretion, and unless they are satisfied as to each defendant that he 'can be materially benefited' by the procedure and that for his 'care and maintenance there exists . . . proper and adequate facilities' (Welf. & Inst. Code, § 1731.5), it will be their duty to return such defendant to the superior court or to take such other action as under the circumstances may be proper, *to the end that he shall be committed to the proper penal institution.*" (Italics added.) (*People* v. *Ralph* (1944), 24 Cal.2d 575, 583 [150 P.2d 401].)

Thereafter, on October 16, 1944, the trial court made the following order: "And in the case of People against Ralph . . . it appearing that . . . defendant . . . [was] sentenced to San Quentin penitentiary by this Court on March 31, 1943, and . . . [is] now [an] inmate of San Quentin . . . and it appearing proper for the Court now to make its order referring this case to the Youth Authority, I do so make said order and refer the case to the Youth Authority. I see no reason to bring . . . defendant back down here from San Quentin penitentiary at the public expense at this time. I will make that order in . . . [his] absence." The above quoted order obviously, and properly, does not purport to vacate the judgment of conviction or sentences previously pronounced or to alter them in any respect excepting as defendant had been denied commitment to the Youth Authority. On October 23, 1944, the Youth Authority, pursuant to the discretion vested in it (see above quotation from *People* v. *Ralph*) rejected the defendant. Subsequently, on November 9, 1944, in each of the two cases the trial court, in defendant's absence, entered new orders in the form of judgments purporting to resentence defendant to the state prison and in which it was stated that "It is further ordered that the defendant remain in the custody of the warden of San Quentin State Penitentiary." Defendant has since been transferred to the state prison at Folsom.

In this habeas corpus proceeding defendant contends that the court was without authority to *resentence* him in his absence, and that as the result of such procedure he was denied a right to appeal "from the judgments and orders thus imposed." In support of his contentions defendant relies upon the following provisions of section 1193 of the Penal Code: "Judgment upon persons convicted of the commission of crime shall be pronounced according to the provisions of

this section, as follows: 1. If the conviction be for a felony, the defendant must be personally present when judgment is pronounced against him. . . .'' We are of the view, however, that petitioner had already had and exercised his right to appeal from the judgment of conviction (Pen. Code, § 1237) and that the trial court's orders of November 9, 1944, following rejection of defendant by the Youth Authority are, under the circumstances shown, in effect merely orders of commitment of defendant after judgment and sentence, to the appropriate penal or correctional institution, do not constitute judgments within the meaning of section 1193 of the Penal Code, and could properly be made in defendant's absence.

Subdivision (a) of section 1739 of the Welfare and Institutions Code (a part of chapter 1, titled ''The Youth Authority'') provides that: ''The right of a person who has been convicted of a public offense to a new trial or to an appeal from the judgment *of conviction* shall not be affected by anything in this chapter.'' (Italics added.) As indicated above, defendant did appeal from the judgments of conviction of the charges to which he had pleaded guilty. Although the scope of the appeal authorized an attack upon all proceedings theretofore had, the sole point urged by defendant was, as above suggested, that he was entitled to be committed to the Youth Authority and, in effect, that the sentences to the state prison should be executed only if the Youth Authority rejected him. This court sustained defendant and granted him the full relief which he sought. However, in so doing, we did not reverse the judgments of conviction or the sentences to imprisonment for the term prescribed by law, but only the commitments to the state prison; i. e., only those portions of the judgments which committed defendant directly to the state prison and thereby operated to deny his motion for tentative commitment to the Youth Authority. (It is to be noted that commitment to the Youth Authority, even if the defendant is accepted by such Authority, does not mean that the person so committed is relieved from restraint. Committing a defendant to the Youth Authority places him in its custody. It may permit him his liberty under supervision or it may order his confinement. (Welf. & Inst. Code, § 1766; see, also, §§ 1753, 1755 and 1780-1783.) He is in the hands of a different administrative board and the duration and conditions of his restraint may be different from what would obtain if he were committed directly to a state prison but the fact

remains that it is the judgment of conviction and sentence which constitute the basis for commitment either to prison (formerly in the custody of the warden, now in the custody of the Director of Corrections (Pen. Code, § 1202(a); Stats. 1945, ch. 91, § 1)) or to the Youth Authority (Welf. & Inst. Code, § 1731.5).

As clearly shown in the herein above quoted excerpt from our opinion, commitment to the Youth Authority can be only tentative, discretion to accept or reject a defendant being vested in the Authority. The effect of our decision upon the appeal was merely to tentatively suspend commitment of the defendant to the state prison dependent upon action by the Youth Authority. Following rejection of defendant by such Authority, the original sentences could properly be carried out, and the trial court's orders of November 9, 1944, are to be regarded as merely commitments to prison made pursuant to the previously pronounced sentences. Such commitments do not constitute new or different judgments or sentences against defendant and consequently his presence was not required at the time they were made. (*Cf. In re Wilson* (1927), 202 Cal. 341 [260 P. 542]; *People* v. *Lenon* (1889), 79 Cal. 631, 632 [21 P. 967]; *People* v. *Sourisseau* (1944), 62 Cal.App.2d 917, 927-928 [145 P.2d 916].)

This view is supported by the provisions of section 1731.5 of the Welfare and Institutions Code, which specify that the court shall commit to the Youth Authority (subject to its acceptance or rejection) one convicted of a public offense, who "*Is not sentenced* to death, imprisonment for life, imprisonment for not more than 90 days, or the payment of a fine" (italics added), and who qualifies in other enumerated respects not material here. An interpretation of these provisions as contemplating that a defendant should be committed to the Youth Authority prior to the pronouncement of the appropriate sentence would indicate that any otherwise qualified convicted person who, prior to the pronouncement of sentence against him, requested commitment to the Youth Authority must be so committed. We have previously expressed ourselves as of the opinion that such an interpretation was not intended by the Legislature. (See *People* v. *Ralph* (1944), *supra,* 24 Cal.2d 575, 581, 582.) The interpretation now suggested by petitioner would require the commitment to the Youth Authority of those obviously intended by the Legislature to be excepted; i. e., those who, following

conviction, are subject to being "sentenced to death, imprisonment for life, imprisonment for not more than 90 days, or the payment of a fine."

In our opinion rendered on the appeal of this petitioner (at pages 581 and 582 of 24 Cal.2d) we noted that the motion for commitment to the Youth Authority was actually made before any sentence had been pronounced but we renounced that fact as material to our conclusion, expressly assumed that the sentences had been pronounced at the time the motion was made, and held "that in literal actuality these defendants had not been sentenced to *life imprisonment.*" Furthermore, we adopted the argument made on behalf of the defendants that "They are sentenced to the term prescribed by law. . . ." Our judgment did not disturb that sentence. On the contrary we relied upon it as a basis for directing (as did the defendant in seeking) commitment of the defendant to the Youth Authority. We set aside only the commitment to the state prison; i. e., commitment to the custody of the warden of the prison as distinguished from the custody of the Youth Authority. We are satisfied that a proper interpretation of the pertinent statutory provisions contemplates that sentence be pronounced prior to tentative commitment of a defendant to the Youth Authority; that should the defendant be rejected by the Youth Authority such sentence be executed as originally pronounced; and that pronouncement of a new sentence is unnecessary, superfluous, constitutes only an order of commitment to a different custodian and has not the stature of a judgment within the meaning of section 1193 of the Penal Code.

In accord, analogically, with our conclusion on this matter is *In re Spagnoli* (1924), 193 Cal. 472, 473 [225 P. 274], which was decided upon facts occurring prior to the 1923 amendment of section 1193 of the Penal Code to expressly provide that following affirmance on appeal of a judgment imposing the death penalty, sentence may be reimposed upon the defendant in his absence by complying with certain specified procedural steps. In that case defendant was convicted of first degree murder and judgment was pronounced imposing the death penalty. On appeal, this court affirmed the judgment. After the going down of the remittitur the trial court, following the procedure prescribed in the amended section, "reimposed sentence" upon the defendant in his absence. On defendant's subsequent habeas corpus petition

in which he challenged such procedure, this court stated, "The prisoner was present in court at the time of the pronouncement of judgment herein. The reimposition of sentence does not constitute the pronouncement or rendition of a judgment. The original judgment herein became final and conclusive upon its affirmance by this court. The reimposition of sentence upon the going down of the *remittitur* amounted, in effect, to nothing more than the fixing of a date for carrying into execution of that judgment." (See, also, *People* v. *Sloper* (1926), 198 Cal. 601, 607 [246 P. 802].) Likewise, in the instant case the trial court's orders of November 9, 1944, amounted to nothing more than orders of commitment to a proper custodian upon the original judgments and sentences.

So far as concerns defendant's contention that he was unlawfully deprived of a right to appeal from the orders of November 9, 1944, it is sufficient to observe that, as already pointed out, he has had his appeal from the judgments of conviction rendered against him (and the sentences upon which he relied) and gained the point there made and that under the circumstances shown here the commitment orders constitute neither judgments of conviction nor judicial orders made after judgment from which an appeal may be taken. (Pen. Code, § 1237; *People* v. *Flannelly* (1900), 128 Cal. 83, 94 [60 P. 670]; *People* v. *Sourisseau* (1944), *supra,* 62 Cal. App.2d 917, 928; *cf.* 4 Cal.Jur. 10-Yr.Supp., 904, § 508; *cf.* Welf. & Inst. Code, § 1739; *In re Herrera* (1943), 23 Cal.2d 206, 214 [143 P.2d 345].)

It may be noted that even should we uphold defendant's contentions presented on this habeas corpus proceeding he would not be entitled to be released from custody, but only to be remanded for resentence (see Pen. Code, §§ 1489, 1493; 13 Cal.Jur. 281, § 56, and authorities there cited) with possible consequent loss of credit for time already served.

For the reasons above stated the writ is discharged and defendant is remanded to custody.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.