[Crim. No. 19176. Second Dist., Div. Five. Aug. 31, 1971.]

THE PEOPLE, Plaintiff and Appellant, v.
BRUCE MILTON McCULLIN, Defendant and Respondent.

## COUNSEL

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, Joseph P. Busch, Jr., District Attorney, Harry Wood, Harry B. Sondheim and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.[1]

## OPINION

**AISO, J.—■** The sole question for decision is whether Penal Code section 1202b applies where a defendant, under 23 years of age, is convicted of murder of the first degree (Pen. Code, §§ 187, 189) subsequent to a stipulation by the People which would bar imposition of the death penalty in his particular case.

An information charged defendant Bruce Milton McCullin with murder (Pen. Code, § 187). He pleaded not guilty and the case was tried to a jury. In course of the *voir dire* examination of the prospective jury panel, the stipulation set forth in the margin below[2] was entered into by the prosecution and defense counsel with the trial court's approval. We agree with the trial court that the stipulation was tantamount to an assurance to defendant that the death penalty would not be imposed in return for his waiver of a jury trial on the penalty issue. The jury found defendant guilty of first

---

[1]In this appeal by the People, a copy of the People's brief was served on defendant's trial counsel by mail on December 17, 1970, and on defendant by mail on December 21, 1970, after his trial counsel advised this court that his services had terminated with proceedings in the trial court. On December 18, 1970, the clerk of this court wrote to defendant inquiring whether defendant desired a court-appointed appellate counsel and enclosed an affidavit of indigency form. However, defendant did not reply. The clerk again wrote defendant on July 9, 1971, reviewing the various communications which had been sent to him, but to which no replies had been received. Defendant was advised that failure to reply within 10 days would be construed as a waiver of his right to ask for court-appointed counsel. On July 13 and again on July 15, 1971, defendant replied stating that he had asked his father to send up a lawyer to discuss the matter with him. On July 30, 1971, the clerk of this court again wrote to defendant advising him that defendant must definitely decide whether he would be represented by private counsel or whether he desired the court to appoint counsel for him, explaining that if he were indigent, the court would appoint counsel to represent his interests at no expense to defendant. However, as of this date, August 30, 1971, defendant has not replied. Without an affidavit of indigency and request for court-appointed counsel, we do not feel authorized to appoint counsel at the taxpayer's expense.

[2]"THE COURT: . . . I believe you have a stipulation you wish to make, Mr. Bozanich [Deputy District Attorney]? [¶] MR. BOZANICH: Yes, your Honor. At this time the People offer to stipulate that if the jury in this case returns a verdict of guilty of murder in the first degree, that the penalty trial—that there will be no penalty trial, and that the matter be submitted to the Court as to punishment. [¶] And secondly, that the People recommend that the death penalty under such circumstances not be imposed. [¶] THE COURT: All right. Thank you. [¶] MR. BOZANICH: Counsel joins in the stipulation, I assume? [¶] MR. WILSON [Defense Counsel]: I will certainly join in that stipulation, your Honor. [¶] THE COURT: All right."

degree murder for his participation in a gunshot slaying of another youth. Defendant was 18 years of age when the offense was committed and under 23 years of age at the time judgment was pronounced.

The trial court correctly observed that it did not have the power to commit defendant to the Youth Authority "where the penalty is life imprisonment." (Welf. & Inst. Code, § 1731.5; *People* v. *Machado* (1957) 150 Cal. App.2d 190, 195-196 [309 P.2d 903].) It then committed defendant to state prison for the period described by law, but added that since defendant was only 18 years of age when he committed the offense the commitment was pursuant to Penal Code section 1202b[3] to permit the Adult Authority to release him "before the normal time." The People objected that section 1202b was not applicable, but the trial court accepted the position urged by defense counsel that the section became applicable when the People's stipulation removed the possible imposition of a death penalty. The People appeal from the order specifying minimum sentence under Penal Code section 1202b. (Pen. Code, § 1238, subd. (a) (6); *People* v. *Orrante* (1962) 201 Cal.App.2d 553 [20 Cal.Rptr. 480].)

Having considered the issue in light of the Penal Code section 4 adjuration that provisions of the code "are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice," we conclude that when the Legislature declared that section 1202b "does not apply to any offense punishable by death," it meant to exclude all offenses for which the statute authorizes the death penalty as a possible maximum punishment[4] regardless of whether it is imposed in a particular

---

[3]Penal Code section 1202b provides: "In any criminal proceeding in which defendant is convicted of a felony or felonies and is committed to the custody of the Director of Corrections, if defendant was, at the time of commission of the offense or offenses, or of the apprehension from which the criminal proceeding resulted, under the age of 23 years, the court may, notwithstanding any other provision of law fixing or affecting the penalty for the offense or offenses, specify that the minimum term of imprisonment for the offense or the offenses cumulatively shall be six months. *This section does not apply to any offense punishable by death.*" (Italics added.)

[4]In addition to murder of the first degree (Pen. Code, §§ 190, 190.1) the following crimes carry an alternative death penalty: (1) kidnaping for purposes of robbery, etc., where the victim suffers bodily harm (Pen. Code, § 209); (2) train wrecking where no person suffers bodily harm (Pen. Code, § 219); (3) assault with malice aforethought by a state prison inmate undergoing a life sentence by means of a deadly weapon or force likely to produce great bodily injury where the victim does not die within a year and a day after the assault or where the victim is another inmate (Pen. Code, § 4500); (4) explosions which cause mayhem or great bodily injury to the person of another (Pen. Code, § 12310); and (5) acts of sabotage causing death or great bodily injury (Mil. & Vet. Code, §§ 1670, 1671, 1672, subd. (a)).

Mandatory death sentences are prescribed for the following crimes: (1) high treason (Pen. Code, § 37); (2) perjury or subornation of perjury which procures a

case. This construction comports with the commonly acknowledged meaning of the word "punishable" as used in criminal statutes in general and with the purpose for which section 1202b was enacted.

*People* v. *Superior Court* (1931) 116 Cal.App. 412 [2 P.2d 843] presented the question whether punishment for an attempted burglary of the second degree fell within that portion of Penal Code section 664 reading "[i]f the offense so attempted is punishable by imprisonment in the state prison for any term less than five years." At the time, the statute prescribed second degree burglary to be punishable by imprisonment in the state prison for not less than one nor more than 15 years. Answering the question negatively, the court defined the word "punishable" when used with reference to an offense to mean "may be punished" or "liable to be punished" and consequently construed the second degree burglary as an offense carrying a punishment of 15 years. (For cases from other jurisdictions similarly construing the word "punishable" in connection with penal statutes, see: *In re Mills* (1890) 135 U.S. 263, 268 [34 L.Ed. 107, 109, 10 S.Ct. 762, 764]; *State* v. *Roberson* (1960) 222 Md. 518, 522, 523 [161 A.2d 441, 443]; *State* v. *Giberson* (1922) 94 N.J. Eq. 25, 29 [119 A. 284, 286].)

An Arizona statute (A.R.S., § 13-1711)[5] conferred jurisdiction on the intermediate appellate court of that state to hear all criminal appeals, except where the crime was "punishable by death or life imprisonment." In *State* v. *Mileham* (1965) 1 Ariz.App. 67 [399 P.2d 688], the defendant, who had been convicted and sentenced to 25 to 40 years' imprisonment, under a statute prescribing the punishment for robbery to be imprisonment for 5 years to life, petitioned for transfer of his appeal to the state supreme court on the ground that the court of appeal lacked jurisdiction to hear his appeal. In granting the transfer, the court stated: "In our opinion, the word 'punishable' refers to the statutory maximum which could be imposed for the offense which was charged. Had the Legislature intended that the test be the punishment which was actually imposed, we are confident that the words 'wherein the sentence imposed is' could well have been used in place of the words 'punishable.' " (1 Ariz.App. at p. 69 [399 P.2d at p. 690].)

---

conviction and execution of an innocent person (Pen. Code, § 128); (3) train wrecking resulting in bodily harm (Pen. Code, § 219); and (4) assault with malice aforethought by a state prison inmate undergoing a life sentence by means of a deadly weapon or force likely to produce great bodily injury if the victim is not another inmate or the victim dies within a year and a day after the assault (Pen. Code, § 4500).

[5]"The state, or any party to a prosecution by indictment or information, may appeal to the court of appeals as prescribed by law and in the manner provided by the rules of criminal procedure, except criminal actions involving crimes punishable by death or life imprisonment which may be appealed to the supreme court."

We think the rationale of *Mileham* is equally applicable to our construction of Penal Code section 1202b. Reference to Welfare and Institutions Code section 1731.5 is also helpful in that there the Legislature used the terms "[i]s not sentenced to death, imprisonment for life, [etc.]" to designate persons under 21 years of age as not being eligible for commitment to the Youth Authority where the sentence imposed rather than the nature of the offense with which defendant is charged and convicted is the determinative factor.

In *Coon* v. *United States* (8th Cir. 1966) 360 F.2d 550, 553-555,[6] the court reasoning in a like manner rejected a defendant's contention that his case fell within the purview of the five-year statute of limitations for offenses, not capital, rather than the one providing for no time limitations "for any offense punishable by death," because the death penalty had not been imposed upon him.

It furthermore appears that the purpose for the enactment of section 1202b was to equalize the period of incarceration between a defendant, under 21 years, committed to the Youth Authority and a codefendant or codefendants, just past 21 years, who are committed as adults to state prison for the same offense. (See Proceedings of the First Sentencing Institute for Superior Court Judges (1965) 45 Cal.Rptr. Appendix 1, 110.) Because one convicted of murder of the first degree, even though under 21 years of age, cannot be committed to the Youth Authority (*People* v. *Bell* (1971) 17 Cal. App.3d 949 [95 Cal.Rptr. 270]), no problem of equalization of the period of incarceration between those committed to the Youth Authority and those committed to the custody of the Director of Corrections is involved in the instant case. Resort to section 1202b under such circumstances would not be in furtherance of the purpose for which the statute was enacted.

For the foregoing reasons, we hold that Penal Code section 1202b is inapplicable when imposing sentence on a defendant, who stands convicted of murder of the first degree, notwithstanding the stipulation at the outset of trial barring imposition of the death penalty against the particular defendant involved.

On the basis of the record before us, defendant was not ineligible for probation as a matter of law. We do not know what the trial court's views

---

[6]Although the Federal Kidnaping Act under which defendant was convicted was later declared to be unconstitutional because it placed an impermissible death penalty hazard against the exercise of one's right to a jury trial (*United States* v. *Jackson* (1968) 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209]), *Jackson* was held to be inapplicable to the principal case where the trial was to a jury which chose not to impose the death penalty. (*Coon* v. *United States* (8th Cir. 1969) 411 F.2d 422.)

with reference to probation would have been if it knew that Penal Code section 1202b was not available. We, therefore, feel that the entire sentence should be vacated and the case remanded to the trial court for the question of probation and sentencing. ■ The record reflects that defendant was not personally armed with the .22 calibre rifle (apparently sawed-off) used to fire the fatal bullet, either at the time of the offense or the time of his arrest. Consequently, he was not barred from consideration for probation as a matter of law even though convicted of first degree murder. (*In re Hernandez* (1966) 64 Cal.2d 850, 852 [51 Cal.Rptr. 915, 415 P.2d 803]; *People* v. *Wade* (1959) 53 Cal.2d 322, 338-339 [1 Cal. Rptr. 683, 348 P.2d 116].)[7]

It is true that the evidence shows that defendant was armed with a baseball bat, and that he smashed the car window ("broke the window" by "bust[ing] a hole" through it, according to defendant's testimony at trial) through which his codefendant, Ferguson, fired the shot which killed the victim, who was sitting in the stationwagon. While a baseball bat can be a deadly weapon because of the manner in which it is used (cf. *People* v. *Helms* (1966) 242 Cal.App.2d 476, 486 [51 Cal.Rptr. 484] [pillow]; *People* v. *Copeland* (1958) 157 Cal.App.2d 185, 187 [320 P.2d 531] ["policeman's club" about a foot long]; *People* v. *Fisher* (1965) 234 Cal. App.2d 189, 193 [44 Cal.Rptr. 302] [tire iron]), on the basis of the evidence presently before us it would appear that the bat was only a dangerous weapon since it was not used to inflict physical injury on the victim. "If the weapon is only dangerous, then probation is within the discretion of the trial court." (*People* v. *Sheeley* (1958) 159 Cal.App.2d 578, 580 [324 P.2d 65].) ■ The determination, however, of whether a weapon, not inherently deadly, is nevertheless to be held to be a deadly weapon for criminal law purposes because of the manner in which it was used in the commission of a crime, is a question of fact (*People* v. *Fisher, supra*) or a mixed question

---

[7]Penal Code section 1203 also contains a clause: "In unusual cases, otherwise subject to the preceding paragraph, in which the interests of justice would best be served thereby, the judge may, with the concurrence of the district attorney, grant probation." *People* v. *Clay* (1971) 18 Cal.App.3d 964 [96 Cal.Rptr. 213] held this portion of section 1203 which requires the concurrence of the district attorney to be unconstitutional. However, the period for filing a petition for hearing by our Supreme Court does not expire until September 7, 1971. Consequently, should the trial judge intend to rely on this portion of section 1203, the later development of this case in the Supreme Court should be watched. In any event defendant is entitled to credit for time which he has already served on any new sentence to be imposed. Penal Code section 2900.1 provides: "Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts."

of law and fact (*People* v. *Copeland, supra*) to be determined by the trier of fact. The issue, therefore, is one better resolved in the trial court, especially in the posture of this case. As this question may not have been previously exhaustively considered because of the court's erroneous view as to the applicability of Penal Code section 1202b, the People or defendant may wish to adduce additional evidence under Penal Code section 1204. Since almost a year has elapsed since the judgment was pronounced, defendant may wish to bring to the attention of the court his record of rehabilitation (if it is favorable) in a current (supplementary) probation report. (*People* v. *Rojas* (1962) 57 Cal.2d 676, 683 [21 Cal.Rptr. 564, 371 P.2d 300].)

By pointing out that the record does not show that probation is foreclosed as a matter of law, our intention is merely to state why the case is being remanded to the trial court for its taking up the matter of probation and sentence anew. Our observations should not be construed as indicating either as favoring or disfavoring the grant of probation. Whether defendant is to be granted probation or again sentenced to state prison is a matter to be determined by the trial court in the exercise of its legal discretion.

The order specifying the minimum term of imprisonment under Penal Code section 1202b is reversed with directions to the trial court to vacate the sentence and take up the matter of probation and sentence anew in light of the views set forth in our foregoing opinion.

Kaus, P. J., and Stephens, J., concurred.