138 Cal.App.3d 873 (1982)
188 Cal. Rptr. 754
THE PEOPLE, Plaintiff and Respondent,
v.
JESUS RODRIGUEZ AVILA, Defendant and Appellant.
Docket No. 11311.
Court of Appeals of California, Third District.
December 31, 1982.
*875 COUNSEL
Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Antonia D. Radillo and Mark L. Christiansen, Deputy State Public Defenders, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and William George Prahl, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
BLEASE, Acting P.J.
Defendant was convicted by a jury of the offenses of conspiracy to commit second degree murder (Pen. Code, §§ 182, 187, 189), kidnaping for the purpose of robbery (Pen. Code, § 209, subd. (b)), and two counts of robbery (Pen. Code, § 211). The jury also found that defendant personally used a dangerous weapon in the commission of the kidnaping and in one of the two robberies. (Pen. Code, § 12022, subd. (b).) The trial court committed him to the California Youth Authority (CYA) for the conspiracy offense, struck the weapon enhancements and stayed the sentences for the remaining offenses. (Pen. Code, § 654.) CYA declined to accept defendant on the sole ground his conviction of kidnaping for robbery disqualified him under Welfare and Institutions Code section 1731.5. He was then returned to the trial court which set aside the judgment and sentenced him to the state prison for the kidnaping offense. He appeals contending he was eligible for commitment to CYA. We agree and direct reinstatement of the CYA commitment.

Facts
Defendant, at the age of 20, came to Sacramento on March 23, 1980, in a pickup truck at the behest of a new-found friend, Humberto Martinez. Martinez stopped to ask directions of a woman. One of the three persons who accompanied defendant and Martinez jumped out of the pickup truck and snatched the woman's purse. The mugger jumped back into the truck and Martinez sped away. The police gave chase soon thereafter. Defendant and his four companions fled on foot when the vehicular police pursuit ended as they crashed into a barricade blocking access to the railroad tracks on First Avenue in Sacramento.
They next abducted Ruben Garcia at a Short Stop convenience store and used Garcia's car to continue their flight. Defendant struck Garcia during the initial assault and, as he was driven away in the car, held a knife to his throat. Garcia *876 testified at the preliminary examination defendant "told me to keep it cool and don't talk because he wasn't going to cut up my throat  my throat up."
During the getaway the abductors searched Garcia, took his wallet containing $20, and discussed their resolve to kill him and flee to Mexico. Martinez, the driver, proposed taking him to a field and stabbing him. He got off Highway 99 at Elk Grove Boulevard and stopped the car in a field. Garcia was taken from the car and held by two of the men accompanying defendant and Martinez. Martinez approached with a knife but Garcia knocked his hand aside, broke away from his captors and ran, regaining his freedom.
The trial court initially committed defendant to the Youth Authority explaining that Avila had no criminal history, had been drinking with five other young men, all Mexican nationals subject to deportation, one of whom stole a purse, another a car, for which Avila was not responsible, leading to a police chase of the stolen vehicle and panic culminating in the abduction. In these singular circumstances the trial court viewed the Youth Authority as remedially appropriate.

Discussion

I
(1) (See fn. 1.) Welfare and Institutions Code section 1731.5[1] provides that a person under 21 years of age who is convicted of a public offense is eligible for commitment and treatment in the CYA unless, inter alia, he or she has been "sentenced to ... imprisonment for life." (Italics added.) (2a) CYA rejected defendant solely because he was convicted of an offense punishable by life imprisonment although he was not to be so punished.[2] CYA thus reads *877 "sentenced" to mean "conviction," a construction which facially strains definitional credulity.
CYA misreads the statute. Section 1731.5 uses "sentenced to ... life imprisonment" in a quite ordinary way as a pronouncement of that sentence. (See In re Ralph (1946) 27 Cal.2d 866, 871 [168 P.2d 1].) The act of pronouncement of sentence is more than the bare utterance of words. The words are performative, i.e., accompanied by imposition of the disqualifying penal sanction. (See generally, in Austin, Philosophical Papers (3d ed. 1979) Performative Utterances, pp. 233-252.) (3) In a criminal action the word sentence is synonymous with judgment. (People v. Spencer (1969) 71 Cal.2d 933, 934-35, fn. 1 [80 Cal. Rptr. 99, 458 P.2d 43]; see Bishop, Judgment in a Sentence (1954) 20 State Bar J. 111.) Although a commitment to CYA is also pronouncement of a sentence (In re Herrera (1943) 23 Cal.2d 206, 214 [80 Cal. Rptr. 99, 458 P.2d 43]) section 1731.5 makes it plain that only one sentence carrying a penal sanction is permissible for an offense punishable by life imprisonment, and that is to state prison.
(2b) However, section 1731.5 does not apply where there is no sentence. If the penal consequence of such a conviction is stayed, the defendant is not sentenced and thus is outside the ambit of section 1731.5. (See fn. 1, ante.) CYA may not bootstrap a conviction into a sentence by reference to the life term of imprisonment mandated if a prison sentence is imposed.[3]
Here, the claimed disqualifying sentence was stayed pursuant to Penal Code section 654 and California Rules of Court, rule 449.[4] Defendant was committed to the Youth Authority only for the offense of conspiracy to commit second degree murder which is punishable by imprisonment for 15 years to life (Pen. Code, §§ 182, 189.)[5] That sentence is not disqualifying. (See In re Jeanice D., supra, 28 Cal.3d at p. 218; People v. Ralph (1944) 24 Cal.2d 575 [150 P.2d 401].) Were we to conclude that a sentence not to be given legal effect, a stayed sentence, counts as a disqualifying condition, we would give effect to the fact of conviction contrary to section 1731.5. We conclude that "sentenced to ... life imprisonment" means the sentence is to be carried out. Defendant was not *878 sentenced to life imprisonment and is therefore statutorily eligible for CYA commitment.
The Attorney General seeks support for a transmutation of "sentenced" to "conviction" in cases in which the defendant was sentenced to a disqualifying penalty and consequently where no distinction between "sentence" and "conviction" was at issue.[6] Accordingly, the issue here is not controlled by the supposed authority upon which he relies.

II
We find support for these conclusions in the salutary purposes of section 654.[7] The statute prohibits punishment for more than one offense when a set of offenses are part of an indivisible course of criminal conduct. (See e.g., People v. Bauer (1969) 1 Cal.3d 368, 375-378 [82 Cal. Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) (4) Even concurrent sentences for such offenses are prohibited (In re Wright (1967) 65 Cal.2d 650 [56 Cal. Rptr. 110, 422 P.2d 998]; People v. Lee (1980) 110 Cal. App.3d 774 [168 Cal. Rptr. 231]) for the reason that concurrent sentences may have collateral consequences, amounting to increased punishment, i.e., subjection to greater punishment for subsequent offenses under habitual criminal offender statutes (In re Wright, supra, 65 Cal.2d at p. 654.)
*879 (5) Although the usual practice when confronted with offenses within the ambit of Penal Code section 654 is to impose sentence on the offense with the most severe punishment, the trial court has discretion to sentence on a less serious offense. (See People v. Mendevil (1978) 81 Cal. App.3d 84, 89 [146 Cal. Rptr. 65]; see also People v. Bradley (1981) 115 Cal. App.3d 744, 753 [171 Cal. Rptr. 487]; People v. Wesley (1970) 10 Cal. App.3d 902, 911-912 [89 Cal. Rptr. 377].) In either event, the procedure is to stay the execution of sentence on all but one of the offenses subject to section 654. (See Cal. Rules of Court, rule 449.) This practice arose as a device to preclude the windfall of freedom from penal sanction upon reversal of the conviction for which punishment was imposed. (See People v. Niles (1964) 227 Cal. App.2d 749, 754-756 [39 Cal. Rptr. 11]; see generally 2 Witkin, Cal. Crimes (1978 supp.) § 951A, pp. 895-897.) In that event (and only in that event) the stayed sentence would, of course, become unstayed.
The practice of staying was accepted as compatible with the prohibition against multiple punishment because it was assumed no incremental punishment can flow from the stayed sentences. (See Niles, supra, 227 Cal. App.2d at pp. 754-756.) Section 654 therefore prohibits punishment for a stayed offense. If the stayed sentence for the kidnaping for the purpose of robbery is construed to preclude a CYA commitment, the effect is the forbidden punishment.
One potentially anomalous result flows from this conclusion. If a person commits only the crime of kidnaping for the purpose of robbery he is ineligible for CYA. However, if he commits another offense as a part of the same criminal course of conduct he is eligible if the trial court stays the disqualifying sentence. This result is no more impermissible here than in any other context in which the trial court is granted discretion to impose sentence on the less serious Penal Code section 654 offense. (See People v. Mendevil, supra, 81 Cal. App.3d 84; People v. Bradley, supra, 115 Cal. App.3d 744; and People v. Wesley, supra, 10 Cal. App.3d 902.)[8]
There is no need to address the remaining contentions of the parties concerning the validity of section 1731.5. The judgment (sentence to state prison) is *880 reversed. The trial court is directed to reinstate the original judgment and commitment of defendant to CYA.
Carr, J., and Sparks, J., concurred.
NOTES
[1] The statute reads: "After certification to the Governor as provided in this article a court may commit to the authority any person convicted of a public offense who comes within paragraphs (1), (2), and (3), or paragraphs (1), (2), and (4), below: [¶] (1) Is found to be less than 21 years of age at the time of apprehension. [¶] (2) Is not convicted of first-degree murder, committed when such person was 18 years of age or older, or sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment. [¶] (3) Is not granted probation. [¶] (4) Was granted probation and probation is revoked and terminated. [¶] The Youth Authority shall accept a person committed to it pursuant to this article if it believes that the person can be materially benefited by its reformatory and educational discipline, and if it has adequate facilities to provide such care." (Italics added.) All further references to section 1731.5 are to this statute.

Sentenced to "imprisonment for life" means confinement for life. In contrast, "a youth who is convicted of an offense carrying an indeterminate sentence with a possible life imprisonment maximum (e.g., a sentence of `five years to life') does not fall within the `imprisonment for life' exclusion embodied in the statute, ..." (In re Jeanice D. (1980) 28 Cal.3d 210, 215 [168 Cal. Rptr. 455, 617 P.2d 1087].)
[2] Kidnaping for the purpose of robbery is punishable in the state prison "for life with possibility of parole." (Pen. Code, § 209, subd. (b).)
[3] The distinction between conviction and sentence is underscored by the recent amendment of section 1731.5 which adds as a disqualifying condition conviction of first degree murder. (Stats. 1981, ch. 476, § 1, p. 1816, eff. Sept. 16, 1981.)
[4] The Attorney General at oral argument claimed, by analogy to juvenile court proceedings, that Penal Code section 654 has no application to CYA commitments. There is no analogy; this is an adult proceeding. Even in juvenile proceedings, the argument has been soundly rejected. (In re Eugene R. (1980) 107 Cal. App.3d 605, 619 fn. 9, [166 Cal. Rptr. 219]; In re Dennis C, (1980) 104 Cal. App.3d 16, 22 [163 Cal. Rptr. 496].)
[5] In 1980 murder in the second degree was punishable by "confinement in the state prison for a term of 15 years to life." (Pen. Code, § 190.) Conspiracy to commit second degree murder was "punishable in the same manner and to the same extent as is provided for the punishment of the said felony." (Pen. Code, § 182.)
[6] The Attorney General relies on People v. Eaker (1980) 100 Cal. App.3d 1007 [161 Cal. Rptr. 417] and People v. Chi Ko Wong (1976) 18 Cal.3d 698 [135 Cal. Rptr. 392, 557 P.2d 976]. In Eaker, the defendant was sentenced to life imprisonment pursuant to former Penal Code section 190. In this context the court's assertion that "if a minor is convicted of an offense punishable as described in ... section 1731.5, he is ineligible for commitment to the Youth Authority" shows no more than an indiscriminate choice of terms. (Italics added.) (Id., at p. 1016.) Similarly, in Chi Ko Wong, upon which Eaker relies, the defendant was sentenced to state prison for first degree murder. He argued he should be sent to CYA. The court said: "It appears from the record ... that when arraigned for sentencing defendant urged only that he be committed to the Youth Authority rather than state prison. But defendant, being subject to life imprisonment by virtue of the first degree murder conviction (Pen. Code, § 190) was and is not eligible for commitment to the Youth Authority. (§ 1731.5; see People v. McCullin (1971) 19 Cal. App.3d 795, 798 [97 Cal. Rptr. 107]; People v. Bell (1971) 17 Cal. App.3d 949, 955-957 [95 Cal. Rptr. 270].)" (Chi Ko Wong, supra, 18 Cal.3d at pp. 724-725.) In the McCullin and Bell cases the defendants were also "sentenced" to life imprisonment. Neither says that "conviction" alone is a sufficient predicate for CYA ineligibility. The assertion that defendant is "subject to life imprisonment" does not mean that a conviction without a sentence is sufficient for CYA ineligibility. The "subject to life imprisonment" language is traceable to In re Ralph (1946) 27 Cal.2d 866, at pages 870-871 [168 P.2d 1] where that penal consequence was contextually ineluctable. (See also People v. Marsh (1982) 136 Cal. App.3d 634, 646 [186 Cal. Rptr. 528].) A defendant is not "subject to" life imprisonment if that sentence may be lawfully stayed.
[7] The statute reads: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."
[8] The impact of this point is diminished by the consideration that not all related offenses fall within the ambit of Penal Code section 654. Additional crimes of violence in most circumstances do not qualify as part of an indivisible course of criminal conduct. (See Bauer, supra, 1 Cal.3d at pp. 375-378; People v. McGahuey (1981) 121 Cal. App.3d 524 [175 Cal. Rptr. 479]; see generally Overland, The Complete Sentencing Handbook (1982) pp. 17-21.) This ruling does not, therefore, lessen the deterent effect of the possibility of greater punishment for such multiple crimes. Moreover, since the decision to stay the offense that would otherwise preclude CYA is within the sound discretion of the trial court we do not anticipate it will be routinely employed.