[Crim. No. 11640. Fourth Dist., Div. One. Feb. 4, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT SHELDON BRADLEY, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Handy Horiye for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, J.**—A jury found Robert Bradley guilty of robbing a cab driver (Pen. Code, §§ 211, 211a; count 1)[1] in which he personally used a pistol (§§ 12022.5, 1203.06, subd. (a)(1)(iii)) and kidnaping for purposes of robbery (§ 209, subd. (b); count 2). Bradley admitted a prior felony conviction and, pursuant to stipulation, the court found him guilty of being an ex-felon in possession of a firearm (§ 12021; count 3). He was sentenced to life with the possibility of parole on count 2. Sentences on count 1 and 3 were stayed pending completion of service of his sentence on count 2. Bradley appeals the judgment claiming trial and sentencing error. We affirm.

### Factual and Procedural Background

On April 30, 1979, Bradley robbed William Bishop, a driver for the Yellow Cab Company, of a bracelet, wristwatch and $30. During the robbery, he threatened to kill Bishop. When Bradley fled, he told Bishop to take off, warning him that he would be killed if he were seen driving the car or if he called the police.

Bishop radioed a report of the robbery as he drove around the block. Bradley, halfway down the block from where he was let off, tried to flag Bishop down yelling "Taxi." Bishop went around the block three times. Each time Bradley tried to flag him down.

During this time, Thomas Brown saw Bradley standing in front of his house. Bradley asked Brown if he had a car and when Brown replied he did not, Bradley went to the side of nearby apartments and bent down near a hole. As Brown walked upstairs to his home, he saw Bradley running in the apartments. Because his clothing generally matched the description of the robber, the police brought Brown to Bishop who immediately said Brown was not the robber. Bishop had previously seen Bradley in the downtown San Diego area about 20 times and on 6 to 8 earlier occasions had given him rides.

On May 19, 1979, Bishop saw Bradley. At about midnight, Bradley and another man with whom Bradley was arguing got into Bishop's cab. The other man told Bishop to go to a motel where Bradley was arrested after Bishop called the police.

---

[1]All statutory references are to the Penal Code unless otherwise specified.

TRIAL ERROR

*Defendant's Right of Cross-examination of a Witness, Thomas Brown, Was Not Unduly Restricted*

■   Bradley first argues the court unduly restricted his right to cross-examine Brown, to impeach him and establish his bias. Brown was a crucial witness. Important to the prosecution, he was even more so to Bradley whose theory of defense was that Brown was the actual robber.

■   A defendant has a fundamental right to cross-examine a witness (*People* v. *Chavez* (1980) 26 Cal.3d 334, 361 [161 Cal.Rptr. 762, 605 P.2d 401]; *Davis* v. *Alaska* (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105]), and where the right has been unduly restricted, a reversal may be required. (*People* v. *Murphy* (1963) 59 Cal.2d 818, 831 [31 Cal.Rptr. 306, 382 P.2d 346].)

■   Bradley's argument centers around his question during cross-examination, "Mr. Brown, let me ask you, approximately one year ago, were you convicted of auto theft in Corpus Christi, Texas?" The court deferred its ruling until, outside the presence of the jury, the question could be fully argued. Defense counsel explained he was relying on *Davis* v. *Alaska, supra,* 415 U.S. 308, which in holding a defendant's constitutional right of confrontation paramount to a state's policy of protecting a juvenile offender against disclosure of a juvenile record, permitted a broad inquiry into a witness' credibility, including cross-examination directed toward possible and relevant biases, prejudices or ulterior motives of the witness. (*Id.,* at p. 316 [39 L.Ed.2d, at pp. 353-354].)   ■   Evidence obtained through cross-examination is admissible on the issue of credibility if the evidence tends reasonably to establish the witness has a reason that might cause the giving of untruthful testimony. (*People* v. *Allen* (1978) 77 Cal.App.3d 924, 931 [144 Cal. Rptr. 6].)

■   Bradley correctly states the law. The question remains whether the court's ruling is as broad and prohibitive as he suggests.

The ruling had two aspects. The first was that a juvenile court adjudication is not a conviction and may not be used to impeach. (Welf. & Inst. Code, § 203; Witkin, Cal. Evidence (2d ed. 1966) § 1244, subd. (1), p. 1147.) In sustaining the objection, the court said, "At this time, until there is information regarding whether he was treated as a juve-

nile, and whether that particular crime with which he was convicted is a felony in Texas, since in Texas they have different degrees of theft." Nothing in the court's statement implied that defense counsel could not inquire further of the witness out of the presence of the jury as to this matter to permit a proper foundation, particularly where the court had previously said, "So, I think we are going to have to determine from this young man—I will do it outside the presence of the jury—as to whether he was treated as an adult or as a juvenile; whether he is still on probation. I will have to inquire into all of those things."

The other aspect to the ruling relates to Brown's possible biases, whether he was on probation or whether he was "working off a beef" with either the police or probation department. Again there is nothing in the ruling precluding questioning along those lines. It appears only as if counsel, during the course of additional cross-examination, elected not to pursue the areas which were left open to him.

### Defendant Received a Fair Trial

Bradley claims there were several errors during trial, the cumulative effect of which was to deny him a fair trial. (See, e.g., *People* v. *Buffum* (1953) 40 Cal.2d 709, 726 [256 P.2d 317].)

### 1. Defendant's Ring Was Properly Received in Evidence

■ Bradley says the authorities improperly seized a ring identified by the victim as having been worn by the robber during the crime.

Before trial Bishop told a representative of the People about the ring. The district attorney determined Bradley was still in custody and a ring was among his impounded possessions. In examining the possessions, Bishop immediately identified the distinctive ring. Based upon that identification, a court order was secured giving the district attorney control of the ring for trial. Over objection, the ring was received in evidence.

Bradley argues he retained his right of privacy over items impounded in the booking search and in the absence of a search warrant, they may not be examined. He does not claim, nor can he, that his booking search was improper (see *People* v. *Maher* (1976) 17 Cal.3d 196, 200-201 [130 Cal.Rptr. 508, 550 P.2d 1044]), or the sheriff exceeded his duty in taking charge of his property (see Gov. Code, § 26640). "Once articles

have lawfully fallen into the hands of the police they may examine them to see if they have been stolen, test them to see if they have been used in the commission of a crime, return them to the prisoner on his release, or preserve them for use as evidence at the time of trial. (*People* v. *Robertson*, 240 Cal.App.2d 99, 105-106 [49 Cal.Rptr. 345].) During their period of police custody an arrested person's personal effects, like his person itself, are subject to reasonable inspection, examination and test. (*People* v. *Chaigles*, 237 N.Y. 193 [142 N.E. 583, 32 A.L.R. 676], Cardozo, J.) Whatever segregation the police make as a matter of internal police administration of articles taken from a prisoner at the time of his arrest and booking does not derogate the fact of their continued custody and possession of such articles." (*People* v. *Rogers* (1966) 241 Cal.App.2d 384, 389-390 [50 Cal.Rptr. 773].)

There may be some impounded items, however, in which a defendant may retain an expectation of privacy. For example, *People* v. *Smith* (1980) 103 Cal.App.3d 840 [163 Cal.Rptr. 322], held a postbooking-search inside a wallet contained in the impounded purse was improper because a wallet inside a purse holds a "vestige of privacy." A ring worn on defendant's finger open to plain view to the victim during the robbery and properly within the custody of the sheriff after booking hardly falls within the same category. It did not have, nor can it acquire after booking, a "vestige of privacy" requiring a search warrant. The retrieval of the ring upon the victim's identification of it and its admission into evidence was proper.

### 2. *Defendant's "Expert" Testimony Was Properly Rejected*

After the prosecution rested, Bradley attempted to present expert testimony of Dr. Robert Shomer, a psychologist, concerning the factors involved with eyewitness identification. Dr. Shomer had not examined the eyewitness, Bishop, and had no specific testimony concerning Bishop's ability to correctly identify the assailant. Virtually identical testimony by the same psychologist was held correctly refused by the trial court in *People* v. *Guzman* (1975) 47 Cal.App.3d 380 [121 Cal.Rptr. 69], because it contributed nothing of value to the jury in its consideration of the validity of the eyewitness identification currently before it. "The good judgment of the trial judge as to whether the particular case contains such unusual factors as to make the 'expert testimony' a help to jury determination or whether the case is one where the effect of such testimony threatens to take over the jury's function must control in the absence of clear abuse of discretion."

(*People* v. *Guzman, supra*, 47 Cal.App.3d 380, 385-386.) We find no such abuse here, especially in light of the fact Bishop so quickly exonerated Brown, the suspect whose clothing generally matched the description of the robber.

### 3. *There Was No Instructional Error*

■ The instructions given under section 12022.5 included an instruction the firearm need not be operable for sentence enhancement. There is conflicting authority as to whether use of an inoperable firearm is enough to inflict the greater penalty under section 12022.5. (Cf. *People* v. *Jackson* (1979) 92 Cal.App.3d 899, 901 [155 Cal.Rptr. 305], and *People* v. *Thompson* (1977) 72 Cal.App.3d 1, 5 [139 Cal.Rptr. 800], holding the firearm need not be operable, with *People* v. *Gaines* (1980) 103 Cal.App.3d 89, 98 [162 Cal.Rptr. 827], holding the firearm must be operable.)

The disposition here, however, does not require our choosing between the alternative theories. If the firearm need not be operable, the instruction was proper. If the firearm must be operable, we still affirm because the error is harmless. The issue of operability was not raised by Bradley, or anyone else, during trial. Accordingly, the court was under no duty to instruct that the weapon had to be operable. In light of the evidence, no prejudice could have resulted from the court's instruction. (*People* v. *Gaines, supra*, 103 Cal.App.3d at pp. 99-100.)

SENTENCING ERROR

*The Trial Court Correctly Implemented Section 654 in Staying Execution of the Lesser Offense*

■ The court sentenced Bradley to life imprisonment with possibility of parole for his conviction of kidnaping for purposes of robbery and stayed execution on the other counts. Bradley asserts the trial court erred in its assessment it was without the authority to stay the more serious sentence pending completion of one of the lesser sentences. If the court sentenced Bradley under the erroneous impression it had no sentencing discretion, the sentence must be reversed. (See *People* v. *Hollis* (1959) 176 Cal.App.2d 92, 98-99.)

■ The function of an appellate court in reviewing sentences involving a section 654 problem must be distinguished from the sentencing

role of the trial court. Where section 654 precludes multiple punishment and the trial court erroneously sentences on all counts, the appellate court must stay the effect of the lesser offense(s) in order to comply with section 654 while permitting execution of the greater offense consistent with the intent of the sentencing court. Under such circumstances, the appellate court can logically presume that where the trial court sentences on all counts, the court meant to impose sentence at least on the most serious. (See, e.g., *People v. Miller* (1977) 18 Cal.3d 873, 876 [135 Cal.Rptr. 654, 558 P.2d 552]; *People v. Green* (1979) 95 Cal.App.3d 991, 1008 [157 Cal.Rptr. 520].) The procedure used by the appellate court, however, does not answer the question of whether, in the first instance, the sentencing court must always impose the sentence for the most onerous offense.

■ As a general rule, a court, in the exercise of its discretion, may impose the lesser offense while staying the greater; for unless otherwise directed, it is not required to punish a defendant with the most severe penalty. (See, e.g., *People v. Hood* (1969) 1 Cal.3d 444, 459 [82 Cal. Rptr. 618, 462 P.2d 370]; *People v. DeVaney* (1973) 33 Cal.App.3d 630, 639 [109 Cal.Rptr. 276]; *People v. Mendevil* (1978) 81 Cal.App. 3d 84, 89 [146 Cal.Rptr. 65].) Here, however, the court was controlled by section 1203.06, which provides in part: "(a) Probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the following persons:...(v) Kidnapping for...robbery, in violation of Section 209." Section 1203.06 requires a prison sentence for the listed offenses "providing for *no* exception in the interest of justice or otherwise." (*People v. Tanner* (1979) 24 Cal.3d 514, 520 [156 Cal.Rptr. 450, 596 P.2d 328].) Thus, every person who uses a gun in the commission of a serious crime faces a stiff prison sentence. (*Id.*, at p. 520.)

Bradley's argument, if accepted, would result in the following: Where a prosecutor elects to charge a defendant with a single crime, for example, kidnaping for robbery, and where instructions on lesser offenses are not proper, a conviction would require imposition of a life sentence with possibility of parole. If, however, the prosecutor charges multiple offenses, such as the case here, the ostensibly more culpable criminal obtains the benefit of judicial discretion which somehow gives the court the power to finesse the mandated prison sentence for the most serious offense, i.e., the kidnaping for robbery pending completion of one of the lesser sentences. We are unwilling to accept this illogical result which frustrates the clear intent of the Legislature. ■ We conclude the

Legislature intended a trial court to be without the discretion to stay execution of a sentence for an offense enumerated in section 1203.06 pending completion of a lesser sentence. The court here was bound by the law to act as it did.

*Disposition*

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied February 18, 1981, and appellant's petition for a hearing by the Supreme Court was denied April 15, 1981.