[No. S046542. Apr. 11, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
FRANKLIN EDWARD NORRELL et al., Defendants and Respondents.

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann K. Jensen, David H. Rose, Joan Killen and Gerald A. Engler, Deputy Attorneys General, for Plaintiff and Appellant.

Jose Villareal, Public Defender, Matthew J. Durket, Deputy Public Defender, and J. Courtney Shevelson for Defendants and Respondents.

**OPINION**

**MOSK, J.**—Penal Code section 654 requires that "[a]n act or omission which is made punishable in different ways by different provisions of this

code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ." We have long held that this provision bars multiple punishment when a defendant is convicted of two or more offenses that are incident to one objective. (*Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Latimer* (1993) 5 Cal.4th 1203 [23 Cal.Rptr.2d 144, 858 P.2d 611] [reaffirming *Neal*].) In this case we address the question whether, in imposing punishment for multiple offenses, a trial court is required to sentence a defendant only for the offense with the greatest potential term of imprisonment. We conclude that it is not.

I.

Defendants Franklin Edward Norrell and Kenneth Kiakin Lau were charged with kidnapping for robbery (Pen. Code, § 209, subd. (b)), robbery (Pen. Code, §§ 211, 212.5, former subd. (b) (Stats. 1989, ch. 361, § 1, p. 1486), present subd. (c)), and reckless driving while attempting to elude a peace officer (Veh. Code, § 2800.2). Lau was alleged to have personally used a firearm (Pen. Code, § 12022.5, subd. (a)); Norrell was alleged to have been armed with a firearm. (Pen. Code, § 12022, subd. (a)(1).)

At trial, the evidence concerning the charges was to the following effect.[1] On November 20, 1992, around midnight, Lau and Norrell, then aged 16 and 19, respectively, approached Terry Jeong in the parking lot of his restaurant in Milpitas, as he was leaving his car, a Mercedes Benz valued at $81,000. They pushed him into the backseat of the car, and, after he dropped his keys, Lau picked them up and handed them to Norrell, who drove off with Jeong and Lau. As they headed off on interstate 880, Lau placed a nine-mm. pistol to Jeong's head and demanded money. Lau removed a ring from Jeong's finger and checked his wallet for money, but found none. He then found a bundle of money on the floor containing $9,300 in cash. About one and three-tenths miles from the parking lot, Norrell stopped the car on the shoulder of the highway near an exit. Jeong was ordered to leave the car. He was not physically harmed. Lau and Norrell continued northbound on the highway.

Jeong went to a convenience store near the highway exit and telephoned the police. Based on his description, the police spotted and pursued the car. After it collided with two other vehicles, Lau and Norrell fled on foot. They were apprehended nearby and identified by Jeong. He recovered his ring and

---

[1]The factual summary is based on the probation reports, police report, and preliminary hearing transcript; the People did not request a reporter's transcript of the trial proceedings, except for the sentencing hearing.

his car. A 9-mm. pistol and $9,300 in cash were found in a dumpster near the scene of the arrest.

When questioned by police, both Norrell and Lau admitted that they were guilty and that they had planned the offense. They denied being armed when they first encountered Jeong, indicating that they had found the gun inside the car. Norrell stated that his interest in coming to Milpitas was to steal a car and sell it for $8,000 to $10,000, so that he could pay off an extortion threat against his family made by members of the Sui Sing gang, a criminal street gang in San Francisco. Norrell stated that he was surprised that Lau pushed Jeong into the backseat, and that he told Lau, as they fled the parking lot, that he wanted to release the victim. Lau stated that he had planned to steal a car in order to help Norrell avert a threat to his family from the Sui Sing gang.

A jury found Lau and Norrell guilty of kidnapping for robbery, robbery, and reckless driving while attempting to elude a police officer. It also found true the firearm allegations.

Pursuant to Penal Code section 654, the trial court determined, and the People apparently conceded, that the offenses of kidnapping for robbery and robbery were incident to one objective. It stayed the sentence for kidnapping for robbery and imposed the sentence for robbery for each defendant. In total, it sentenced Norrell to state prison for six years, eight months, consisting of the upper term of five years for the robbery, one year for the firearm enhancement, and eight months for the Vehicle Code violation. It sentenced Lau to state prison for ten years, eight months, consisting of the upper term of five years for the robbery, five years for the firearm use enhancement, and eight months for the Vehicle Code violation. It required each to pay restitution. Each waived all credits for time served and waived his right to appeal the sentence.

In imposing sentence, the trial court explained: "I have considered long and hard the issues before me in this matter. The gravity of these offenses is indeed, as the District Attorney characterizes, very, very severe. The conduct of the defendants is inexcusable and each of their records reflect[s] prior problems of understanding their obligations as an individual in this society. However, due to the age of the defendants, the totality of the circumstances surrounding this offense, fortunately the Court heard the trial and is in a position to judge the severity of this offense, the nature of seriousness and circumstances compared to other instances of the same crime, the Court is exercising its discretion in this matter. . . . This is a very difficult decision I have to make. On [the] one hand the current climate of people is to

sentence individuals to prison for life for violent crimes, and [Mr. Lau] and Mr. Norrell have committed a very serious, violent crime, but I'm struck with two factors, one, the circumstances of the crime and both of you are youths. You have the opportunity now hopefully to rehabilitate yourself, be a[n asset] to your family and that's my wish."

The People appealed, contending that the trial court imposed an unauthorized sentence by staying the sentence on the "greater offense" of kidnapping for robbery, and imposing the sentence on the "lesser offense" of robbery. They argued that the "greater offense" is that offense which carries the longest potential term of imprisonment, and that, in this case, the kidnapping for robbery, punishable by life imprisonment with the possibility of parole (Pen. Code, § 209, subd. (b)) was the "greater offense" and the robbery, punishable by a term of two, three, or five years (*id.*, § 213, subd. (a)(2)) was the "lesser offense." The Court of Appeal dismissed the appeal, concluding that the trial court acted within its authority under Penal Code section 654 in staying the punishment for kidnapping for robbery, even though it is punishable by a longer potential term of imprisonment than robbery. We granted review.

## II.

The People, as before, contend that the trial court imposed an unauthorized sentence by staying the sentence for the "greater offense" of kidnapping for robbery and imposing a "lesser" sentence for the offense of robbery. They do not maintain that Penal Code section 654 is inapplicable to this case, but argue that the trial court has authority under the provision only to impose the punishment for the offense that carries the longest potential sentence. Otherwise, they argue, the trial court would effectively "reward" a defendant who is convicted of multiple offenses incident to one objective, and thereby frustrate legislative intent.

They are unpersuasive. Penal Code section 654 expressly provides that a defendant may be punished for *either* offense: "An act or omission which is made punishable in different ways by different provisions of this code may be punished *under either of such provisions*, but in no case can it be punished under more than one . . . ." (Italics added.) Although it was free to do so at any time since Penal Code section 654 was enacted in 1872, the Legislature has not limited the trial court's discretion by a requirement that it impose

punishment for the offense with the greatest potential term of imprisonment.[2]

We have previously so stated: if multiple offenses committed by a defendant were "incident to one objective," the defendant "may be punished for *any one of such offenses* but not for more than one." (*Neal* v. *State of California, supra*, 55 Cal.2d 11, 19, italics added.) We reaffirm that conclusion here, based on the express language of Penal Code section 654.

In *Neal*, the defendant threw gasoline into the bedroom of his victims and ignited it; they were severely burned. He was convicted of arson and attempted murder and sentenced for both offenses. Writing for the majority, Justice Traynor concluded that punishing the defendant for *both* crimes violated Penal Code section 654 because they were incident to one objective, i.e., the arson was "merely incidental to the primary objective" of killing the victims. (55 Cal.2d at p. 20.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." (*Id.* at p. 19.) In sentencing pursuant to Penal Code section 654, the trial court retains discretion to impose punishment for the offense that it determines, under the facts of the case, constituted the defendant's "primary objective": "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." (55 Cal.2d at p. 20.) Recently, in *People* v. *Latimer*, we reexamined the "intent or objective" test that we announced in *Neal*. We declined to overrule our holding in *Neal*, emphasizing that "at this late date, any changes must be made by the Legislature . . . ." (*People* v. *Latimer, supra*, 5 Cal.4th at p. 1216.) As we observed in *Latimer*, the Legislature has not amended Penal Code section 654 in order to supersede *Neal*, although it could have done so. On the contrary, it has drafted subsequent Penal Code provisions in light thereof. (5 Cal.4th at p. 1214 [referring, inter alia, to Penal Code section 667.8].)

Although we have not previously expressly held that the trial court has discretion under Penal Code section 654 to impose a sentence for the

---

[2]There can be no doubt that the Legislature is aware of its ability to curtail or eliminate trial court sentencing discretion when it determines that it is appropriate to do so. Thus, it has enacted sentencing provisions that are not subject to the requirements of Penal Code section 654. (See, e.g., Pen. Code, §§ 667.8, 667.6, subd. (c); *People* v. *Hernandez* (1988) 46 Cal.3d 194, 203 [249 Cal.Rptr. 850, 757 P.2d 1013] ["the additional term to be imposed under [Penal Code] section 667.8 was originally designed to eliminate the partial sentence reduction that might be gained by application of . . . the prohibition against multiple punishment contained in [Penal Code] section 654"]; *People* v. *Hicks* (1993) 6 Cal.4th 784, 792 [25 Cal.Rptr.2d 469, 863 P.2d 714] ["the enactment of [Penal Code] section 667.6[, subdivision] (c), created an exception to [Penal Code] section 654"].)

"greater" or "lesser" offense as it deems appropriate, we implicitly sanctioned such exercise of discretion in *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370]. In that case, the defendant was convicted both of assault with a deadly weapon and assault with intent to murder. As we recited: "To preclude double punishment for a single assault (Pen. Code, § 654) the trial court stayed execution of the sentence on count I [assault with a deadly weapon], which carries a maximum penalty of 15 years . . . and ordered that defendant serve the sentence on count III [assault with intent to murder], which carries a maximum penalty of 14 years." (1 Cal.3d at p. 459.) We did not disapprove the trial court's imposition of punishment for what the People would deem the "lesser offense"; rather, in reversing on other grounds, we remanded with instructions that if the defendant were again convicted of both assault offenses, the trial court could impose a sentence no greater than the original sentence. (*Ibid.*) As Justice Baxter concluded in *People* v. *Thompson* (1989) 209 Cal.App.3d 1075, 1085 [257 Cal.Rptr. 658]: "If the trial court had abused its discretion in *Hood*, the Supreme Court would not have placed such a limitation on the maximum sentence on retrial."

Since *Hood*, our Courts of Appeal have been virtually unanimous in affirming that when a defendant is convicted of multiple offenses incident to one objective, Penal Code section 654 means what it says: the "act or omission" may be punished under "either" of the Penal Code provisions for such offenses. (Pen. Code, § 654; see *People* v. *Wesley* (1970) 10 Cal.App.3d 902, 911-912 [89 Cal.Rptr. 377]; *People* v. *DeVaney* (1973) 33 Cal.App.3d 630, 639 [109 Cal.Rptr. 276]; *People* v. *Mendevil* (1978) 81 Cal.App.3d 84, 89 [146 Cal.Rptr. 65]; *People* v. *Bradley* (1981) 115 Cal.App.3d 744, 753 [171 Cal.Rptr. 487]; *People* v. *Avila* (1982) 138 Cal.App.3d 873, 879 [188 Cal.Rptr. 754]; *People* v. *Barela* (1983) 145 Cal.App.3d 152, 156-161 [193 Cal.Rptr. 257]; *People* v. *Smith* (1985) 163 Cal.App.3d 908, 914, fn. 10 [210 Cal.Rptr. 43]; *People* v. *Cole* (1985) 165 Cal.App.3d 41, 53 [211 Cal.Rptr. 242]; *People* v. *Salazar* (1987) 194 Cal.App.3d 634, 637-639 [239 Cal.Rptr. 746]; *People* v. *Thompson*, *supra*, 209 Cal.App.3d 1075, 1078-1086; *People* v. *Thompson* (1992) 7 Cal.App.4th 1966, 1975 [10 Cal.Rptr.2d 15].)[3] The Legislature, although clearly empowered to do so, has not amended Penal Code section 654 to limit the trial court's discretion to impose a sentence commensurate with culpability under the facts of the particular case.

As *Salazar* explains: "[D]iscretion to sentence on the greater or lesser crime is vital to a trial court's proper exercise of its sentencing mandates:

---

[3]All six districts of our Courts of Appeal have reached the same conclusion. The single Court of Appeal decision to adopt a contrary position was *People* v. *Superior Court (Himmelsbach)* (1986) 186 Cal.App.3d 524 [230 Cal.Rptr. 890], which was subsequently repudiated by the *same* Court of Appeal, the Sixth District, in this matter. We now disapprove *Himmelsbach*.

'[A] sentencing judge is required to base his decision on the statutory and rule criteria . . . and *not* his subjective feeling about whether the sentence thus arrived at seems too long, too short, or just right.' [Citation.] The analysis should be the same when the court is faced with a sentencing choice under Penal Code section 654. The court should impose sentence on the offense which is most appropriate for the defendant's conduct and not simply the one carrying the greatest penalty. Only in this way will a defendant's punishment 'be commensurate with his culpability' and the purpose of Penal Code section 654 fulfilled." (*People* v. *Salazar, supra,* 194 Cal.App.3d at p. 639.) *Salazar* involved an attempted purse snatching in which the defendant repeatedly struck the victim and pushed her to the ground. After the defendant pleaded guilty to both felony assault and robbery, the trial court imposed the punishment for assault and stayed the greater sentence for robbery. The Court of Appeal determined that the trial court acted within its discretion in doing so, because the punishment was "'appropriate and consistent with the factual situation.'" (*Ibid.*)

Thus, as *Salazar* and other Court of Appeal cases have recognized, in any given case, although a defendant may be convicted of multiple crimes, the most appropriate punishment *under the specific circumstances of the case* may not be for the offense that yields the greatest potential term of punishment. Under Penal Code section 654, a trial court has discretion to impose a sentence that is commensurate with what it determines on the *facts* to be a defendant's culpability, as opposed to "culpability" established mechanically by adding together penalties and enhancements to arrive at the greatest overall potential prison sentence.

This case is illustrative of a not unreasonable exercise of discretion. The trial court imposed the maximum punishment for robbery, and stayed the punishment for kidnapping for robbery, in what was, by all accounts, essentially a robbery by youthful defendants. The trial court did not "reward" them for committing multiple offenses incident to that single objective. It exercised discretion, as Penal Code section 654 permits, in light of the actual circumstances of the crime and the age and juvenile records of defendants; it was not unreasonable in so doing. We reject the People's argument, based on purported legislative "intent" as opposed to specific legislative enactments, that the trial court lacked authority to do so.[4]

The People point out that in *Neal,* after concluding that the trial court improperly imposed sentences for two crimes incident to one objective, we

---

[4]At the same time, contrary to Justice Baxter's assertion in his concurring opinion, we also express no enthusiasm for the sentence in this case; we merely conclude that it was not unreasonable. Nor do we suggest or imply that it was "the only reasonable sentence these defendants could have received." (Conc. opn. of Baxter, J., *post,* at p. 11.) As Justice Baxter concedes, such a determination is not ours to make.

ruled that the defendant could "only be punished for the more serious offense." (*Neal* v. *State of California*, *supra*, 55 Cal.2d at p. 20.) Similarly, in *People* v. *Knowles* (1950) 35 Cal.2d 175 [217 P.2d 1], in which the defendant was improperly sentenced for both a kidnapping and a robbery that were incident to one objective, we held that the appellate court was required to stay the imposition of sentence on the less serious offense. (See also *People* v. *McFarland* (1962) 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449].) As Justice Baxter observed in *Thompson*, however, those cases are distinguishable: "*Knowles*, *Neal* and *McFarland* merely recited the requisite procedure *on appeal* when Penal Code section 654 is violated by the sentencing court." (*People* v. *Thompson*, *supra*, 209 Cal.App.3d at p. 1085, italics added.) " 'Under such circumstances, the appellate court can logically presume that where the trial court sentences on all counts, the court meant to impose sentence at least on the most serious.' " (*Id.* at p. 1080.) That presumption is inapplicable to the issue presented in this case, concerning the scope of the trial court's sentencing discretion *in the first instance*, when a defendant is convicted of multiple offenses incident to one objective.

We are also unpersuaded by the People's contention that permitting trial court discretion in sentencing under Penal Code section 654 will result in decisions to charge and prosecute defendants who committed multiple offenses incident to one objective *only* for the "greater offense," so as to preclude the exercise of discretion by the trial court. They merely speculate that such "brinkmanship" has occurred under what has been the prevailing interpretation of Penal Code section 654 in our Courts of Appeal for over two decades, or is likely to occur in the future. Nor is there any support for their suggestion that trial courts have in the past, or are likely in the future, to abuse their discretion under Penal Code section 654, and impose inappropriately lenient sentences. Should such problems emerge, "the Legislature . . . obviously has the authority to modify the rule any time it chooses." (*People* v. *Latimer*, *supra*, 5 Cal.4th at p. 1216.)

III.

The concurring and dissenting opinion agrees with our conclusion that the trial court acted within its discretion in this case in staying the punishment for kidnapping for robbery. It does so, however, *only* because the trial court imposed a greater overall sentence than that which *might have* been imposed for the latter crime—punishable by life imprisonment with the possibility of parole—which in Norrell's case *might have* resulted in probation, i.e., no prison term at all, and in Lau's case, because he was ineligible for parole, *could have* resulted in a prison sentence shorter than ten years, eight months, *if he were paroled* after the minimum period of confinement of seven years

(see Pen. Code, § 3046). The approach is unduly formalistic: as the People pointed out at oral argument, the mere fact that defendants requested, and the People opposed, a stay of the sentence for kidnapping for robbery—and that defendants waived their right to appeal imposition of the sentence for robbery—demonstrates that life imprisonment with possibility of parole was, in any real sense, the *greater*, not the lesser, punishment.

The approach is also incorrect. The rule proposed in the concurring and dissenting opinion, like the one proposed by the People, finds no support in any specific statutory provision, and is based on mere inferences concerning the overall "intent" of the Penal Code. It is also directly inconsistent with the language of Penal Code section 654, our previous decisions, and the numerous Court of Appeal cases in point. We conclude that discretion to impose punishment under Penal Code section 654 is not so constrained; the trial court is not required to base its sentencing decisions on mechanical calculations about eligibility for parole or earliest possible release dates considered *in the abstract*.

In effect, the concurring and dissenting opinion would judicially amend Penal Code section 654 to provide as follows: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one, *except that a defendant may not be sentenced to any punishment that is less than any mandatory minimum term of incarceration for any of the offenses*." It is the Legislature's role to amend statutes, not this court's. We are bound by the statutory language.

For the reasons stated, we affirm the judgment of the Court of Appeal.

Lucas, C. J., and Werdegar, J., concurred.

**BAXTER, J.**—I concur with the lead opinion of Justice Mosk insofar as it does not alter the trial court's traditional discretion to implement the statutory ban on multiple punishment, and finds no abuse of discretion here. (Pen. Code, § 654 (hereafter section 654).) I write separately, however, because I do not share the lead opinion's apparent enthusiasm for the sentence imposed in this case. I also cannot ignore the powerful points made by Justice Arabian in his concurring and dissenting opinion concerning the sentencing anomalies that can arise under section 654, as interpreted in the lead opinion.

Much like Justice Mosk, I find no basis on which to infer wholesale restrictions on the authority of the trial court to select the appropriate punishment at this late date in section 654's history. Nothing in the statutory

language or case law clearly provides that, where a defendant is convicted of multiple crimes arising out of a single criminal act or transaction, the court is prohibited from staying sentence on a particular offense—the "most severely punishable" offense—as argued by the People. Nor has section 654 ever been read to require a sentencing court to honor the particular baseline punishment urged by Justice Arabian—the "mandat[ory] minimum" sentence applicable to any of the defendant's convictions. (Conc. & dis. opn., *post*, at p. 14.)

However, I disagree with any implication in the lead opinion that the only reasonable sentence these defendants could have received is the one imposed by the trial court. Another sentencer familiar with the record and imposing punishment in the first instance could reasonably conclude this case involved more than a mere "robbery by youthful defendants." (Lead opn., *ante*, at p. 8.) Defendants approached the victim in a parking lot around midnight, forcibly kidnapped him in his own car, held a gun to his head, and robbed him of jewelry and cash. The trial court could properly have determined that the crime was exceptionally dangerous and well planned, that each defendant had previously committed several other crimes of increasing seriousness, and that imposition of a life term for the kidnapping for robbery was appropriate notwithstanding defendants' youth.

But such a determination is not ours to make. Here, the court made clear at the sentencing hearing that it heard the evidence introduced at trial, observed defendants in court, and read the probation reports and related evaluations prepared by the youth authorities. After weighing the sentencing alternatives and considering the "totality of the circumstances," the court stayed sentence on the kidnapping-for-robbery count for both defendants under section 654, and imposed the "maximum sentences possible under the law" for their other convictions. We cannot say this determination constituted an abuse of discretion as a matter of law.

Nevertheless, I agree with Justice Arabian that the lack of any express limits on the trial court's discretion under section 654 may produce consequences which the Legislature did not anticipate and which it may wish to prevent in the future. The purpose of the statute is to ensure that a criminal defendant does not receive *excessive* punishment. Yet, as so forcefully demonstrated by Justice Arabian and reflected by the facts of this case, a defendant who is convicted of multiple crimes carrying different punishments may receive a more lenient sentence by virtue of section 654 than he could have received had he only committed and been convicted of the offense carrying a punishment greater than that ultimately imposed by the court. The Legislature could reasonably conclude that such a scenario results in a sentencing windfall that should not be tolerated in any case.

I also agree with both Justice Mosk and Justice Arabian that nothing precludes the Legislature from amending the statute in the manner urged by either the People or Justice Arabian. (See lead opn., *ante*, at p. 9; conc. & dis. opn., *post*, at p. 23.) As far as I can discern, the ban on multiple punishment imposed by section 654 and applied here is not constitutionally compelled. (See *Missouri* v. *Hunter* (1983) 459 U.S. 359, 368-369 [74 L.Ed.2d 535, 543-544, 103 S.Ct. 673] [double jeopardy principles do not preclude imposition, in a single trial, of "cumulative" punishments for separate convictions based on the same act or transaction where the Legislature clearly intends such a result]; *People* v. *Tideman* (1962) 57 Cal.2d 574, 578, 585 [21 Cal.Rptr. 207, 370 P.2d 1007] [section 654 is not based on, or similar to, double jeopardy principles].)

Just as the Legislature could presumably repeal the statute altogether, so too may it amend the statute to ensure that a defendant convicted of multiple crimes does not receive more lenient treatment by virtue of section 654 than he could have received if the statute did not apply. I defer to the Legislature in determining whether reevaluation of the trial court's discretion under section 654 is necessary in light of today's decision.

**ARABIAN, J.,**\* Concurring and Dissenting.—Defendant Kenneth Kiakin Lau committed and was convicted of kidnapping for robbery with use of a firearm. The Legislature has decreed that for this crime and enhancement, he "shall" receive a prison sentence of life with the possibility of parole plus at least three years. (Pen. Code, §§ 209, subd. (b) [kidnapping for robbery], 1203.06, subd. (a)(1)(D) [probation ineligibility], 12022.5, subd. (a) [firearm use enhancement].) The majority concludes that under Penal Code section 654, the court may impose a sentence *lower* than this statutory minimum. We ask what made Lau eligible for a lower sentence under the majority rule? Three circumstances: (1) he committed the *additional* crime of actually robbing the victim; (2) the prosecution charged that additional crime; and (3) the jury *convicted* him of both crimes. Lau is thus fortunate that he not only kidnapped but also carried out his intent to rob. Incredibly, because he did not have a change of heart and release the victim without robbing him he is eligible for a reduced sentence.

Believing that the purpose of the criminal justice system and the Penal Code as a whole is to deter and punish criminal conduct, not to encourage and reward it, I dissent. I would hold that the court may not impose a sentence lower than the minimum the Legislature has prescribed for the defendant's criminal conduct because he committed and was convicted of multiple crimes.

\*Retired Associate Justice of the Supreme Court, sitting under assignment by the Chairperson of the Judicial Council.

## I.

On November 20, 1992, defendants Lau and Franklin Edward Norrell encountered the victim, Terry Jeong, in a parking lot in Milpitas. They forced Jeong into the backseat of Jeong's car, and, with Norrell behind the wheel, drove off. En route Lau threatened Jeong by putting a nine-millimeter pistol next to Jeong's head, and demanded money. Lau took Jeong's wedding ring, checked Jeong's wallet for money, found none, but then found $9,300 in a bundle on the car floor. Defendants then forced Jeong out of the car and continued driving. Jeong managed to contact the police, who apprehended the defendants after a chase. The $9,300 in cash and a nine-millimeter pistol were found in a dumpster near the arrest scene. Jeong's car and wedding ring were also recovered.

The jury found defendants guilty of kidnapping for robbery (Pen. Code, § 209, subd. (b)), robbery (Pen. Code, § 211, former § 212.5, subd. (b)), and reckless driving while attempting to elude a peace officer (Veh. Code, § 2800.2). It also found that Lau personally used, and Norrell was armed with, a firearm in the commission of the kidnapping for robbery and robbery counts. (Pen. Code, §§ 12022, subd. (a)(1), 12022.5, subd. (a).) The court sentenced Lau to prison for ten years, eight months, consisting of the upper term of five years for the robbery, five years for the firearm use enhancement, and eight months (one-third of the midterm) for the Vehicle Code violation. It sentenced Norrell to prison for six years, eight months, consisting of the upper term of five years for the robbery, one year for the arming enhancement, and eight months for the Vehicle Code violation. As to both defendants, the court stayed the life sentence for the kidnapping for robbery pursuant to Penal Code section 654 (hereafter section 654).

In this appeal, the People argue that the court was required to stay the sentence for the lesser offense of robbery and impose that for the greater offense of kidnapping for robbery, rather than the other way around.

## II.

As pertinent, section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ." The parties agree that under our interpretation of this provision, the defendants may be punished for either the kidnapping for robbery or the robbery, but not both. (See generally, *People* v. *Latimer* (1993) 5 Cal.4th 1203 [23 Cal.Rptr.2d 144, 858 P.2d 611].) Where two such counts are involved, the proper procedure is to impose sentence for both of

the counts, and stay sentence for one of them. (*People* v. *Pearson* (1986) 42 Cal.3d 351, 359-361 [228 Cal.Rptr. 509, 721 P.2d 595].) That is what the trial court did. The sole issue here is whether the court had discretion to impose only the *lesser* sentence and stay the *greater*.

The majority concludes that a lesser sentence may be imposed than is prescribed for the greatest crime if, but only if, the defendant *also* committed, and was charged with and convicted of, an additional lesser crime. It relies primarily on the language of section 654, which it reads as permitting no limitations on the power of the court to choose which sentence to impose and which to stay. It interprets that provision as allowing the court to impose a sentence that is lower than the statutorily mandated *minimum* for one of the crimes the defendant committed. The majority is correct that nothing in the literal language of section 654 expressly limits the power of the court to "punish[] under either" of the crimes; nothing expressly states that the court must act within the bounds of discretion. But the literal language must be construed and, if necessary, may be disregarded, to avoid absurd results and to fulfill the intent of the framers. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].) Here the literal language need not be disregarded to avoid the absurd result of the majority. All statutory grants of judicial authority require the *reasonable* exercise of discretion, sometimes expressly, otherwise impliedly. Section 654 is no exception. The discretion it provides is not unbridled but is "guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice." (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237].)

Section 654 does not exist in a vacuum. Like any statute, it must be construed with reference to the entire system of law of which it is a part, so that all may be harmonized and have effect. (*People* v. *Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159].) It should go without saying that the Penal Code as a whole is designed to punish criminal behavior. More specifically, numerous Penal Code sections prescribe minimum punishments for criminal offenses. These provisions inform the proper interpretation of section 654. The general language of section 654 does not trump the specific language of Penal Code sections 209, subdivision (b), 1203.06, subdivision (a)(1)(D), and 12022.5, subdivision (a), that a defendant "shall" receive a minimum sentence for those crimes committed by Lau.

Section 654, by its language, prohibits multiple punishment. That is all. It does not address the question of sentencing discretion, much less create an exception to statutorily mandated minimum sentences. It was certainly not intended to reward extra criminality.

As we have often stated, the purpose of section 654 "is to insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63]; accord, *People v. Latimer*, *supra*, 5 Cal.4th at p. 1211; *Neal v. State of California* (1960) 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839].) *A person who commits two crimes is not less culpable than if that person had committed only one of those two crimes.* Allowing a reduced sentence *because* of increased criminal behavior is not reasonable, and does not make punishment commensurate with culpability.

## III.

Not only is the majority's interpretation of section 654 unwarranted by its language, as policy it is irrational. It is, indeed, trebly irrational; each of the three prerequisites for a lower sentence under the majority's rule is an illogical basis for leniency.

*First*, to be eligible for a reduced sentence under today's ruling, the defendant must commit a lesser crime as well as the greater. If the defendants here had not committed the additional crime of robbery, if they had stopped after the kidnapping itself and released their victim, not even the majority would find them eligible for a sentence lower than that prescribed for the crime of kidnapping for robbery. It requires no complicated analysis to illustrate the irrationality of premising leniency on increased criminal behavior.

Here, the defendants forcibly kidnapped the victim, Jeong, in his car intending to rob him. En route, they committed the actual robbery. If someone had stopped them after the kidnapping but before the robbery, or if the victim had escaped, or if the defendants had had a change of heart and freed their captive, they could still have properly been convicted of the kidnapping, but not of the robbery. There would thus not have been any robbery sentence to impose, and the court would not have been able to stay the more serious offense under the guise of section 654. But the defendants' culpability is not *reduced* because they also robbed the victim. They should not *benefit* from the fact they not only kidnapped with intent to rob, but also carried out that intent.

What if one of the defendants had had a change of heart, and abandoned the criminal enterprise before the actual robbery, and the other then robbed the victim alone? According to the majority, if the one who had a change of heart was convicted only of kidnapping for robbery, and the other was convicted of both the kidnapping and the robbery, the one convicted of *both*

could get a sentence *lower* than that required for the kidnapping; only the other, the one who did not personally rob, must pay the full price. Is this justice? Is this what the Legislature intended when it prohibited multiple punishment in section 654? Is this punishment commensurate with culpability?

The lead opinion protests that its rule does not " 'reward' " defendants for committing multiple offenses (lead opn., *ante*, at p. 8), but in inescapable fact it does just that. Once the defendants kidnapped Jeong intending to rob him, the only way they could become eligible for a sentence lower than the minimum for that crime was to commit an *additional* crime, such as the robbery. Beyond question, this is a reward for committing that additional crime.

*Second*, in order to be eligible for a reduced sentence, the prosecutor must charge the additional crime. If it is not charged, not even the majority would find the defendant eligible for a lower sentence. We have often stressed that when the evidence would support conviction of lesser offenses as well as the greatest crime charged, juries should generally not be limited to either convicting of the greatest crime or completely acquitting the defendant. The jury should be given the full range of choices the evidence justifies. (*People v. Barton* (1995) 12 Cal.4th 186, 196 [47 Cal.Rptr.2d 569, 906 P.2d 531]; *People v. Geiger* (1984) 35 Cal.3d 510, 526, 530 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055].) We should not transform giving the jury choices into a basis for a reduced sentence.

Let us consider another example of the absurdity of the majority's rule. Assume a person shoots someone under circumstances in which a jury reasonably might, but would not necessarily, find an intent to kill. The victim survives. The prosecution would be justified in charging attempted murder, which requires an intent to kill. It might reasonably, however, also choose to charge the lesser related offense of assault with a firearm, which does not have that intent requirement. If the jury found an intent to kill, it would convict of attempted murder, but if not, at least it could convict of assault, a crime certainly committed. But if the jury does find an intent to kill, and therefore convicts of *both* offenses, the charging decision should not provide an excuse to sentence the defendant solely on the assault charge, and not on the more serious attempted murder. The defendant's culpability should be measured by the shooting with intent to kill, not the same act without murderous intent.

Under the majority rule, which places no limitations on which sentence may be stayed, if a defendant is charged and convicted of *both* attempted

murder and assault with a firearm, the court could impose a sentence on the assault charge as low as *two* years plus any enhancement, and stay sentence on the attempted murder. (Pen. Code, § 245, subd. (a)(2).) If the defendant is charged with and convicted of *only* attempted murder, the minimum sentence would have to be *five* years plus any enhancement. (Pen. Code, § 664, subd, (a); see *People v. Bright* (1996) 12 Cal.4th 652, 655-656 [49 Cal.Rptr.2d 732, 909 P.2d 1354].)

*Third*, to be eligible for a reduced sentence, the defendant must be convicted of both the greater and the lesser offenses. If the jury convicts the defendant of the greater offense but then, unwittingly thinking it was exercising leniency, acquits of the lesser, under today's ruling, this *acquittal* would *preclude* the court from imposing a *lower* sentence. No doubt that jury would be astonished if subsequently informed by a dismayed defense attorney that the presumed act of leniency instead prevented leniency. Similarly, if the jury convicted what it considered the more culpable of two defendants of all charged crimes, and acquitted the less culpable of the lesser offense, it would be likewise be dismayed to learn that only the one convicted of all crimes was eligible for leniency.

## IV.

The lead opinion relies in part on a supposed "virtually unanimous" line of Court of Appeal decisions reaching the same conclusion. (Lead opn., *ante*, at p. 7.) Upon inspection, however, this reliance is misplaced. The first case the lead opinion cites contained no analysis of the merits of the issue; most of the rest merely cite earlier cases without analysis, often while distinguishing them.

At the outset, it is important to note that, as even the lead opinion concedes (lead opn., *ante*, at pp. 6-7), we have never directly addressed this issue. Both sides cite certain of our decisions that appear to support their position. The view that the court must impose sentence on the greater offense and stay the lesser claims support in numerous cases in which the trial court erroneously imposed multiple punishment. In those cases, we indicated that the court could impose only the punishment for the more serious offense. (E.g., *People v. Pearson, supra*, 42 Cal.3d 351, 359-360; *People v. Milan* (1973) 9 Cal.3d 185, 197 [107 Cal.Rptr. 68, 507 P.2d 956]; *People v. McFarland* (1962) 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449]; *Neal v. State of California, supra*, 55 Cal.2d at p. 20; *People v. Knowles* (1950) 35 Cal.2d 175, 189 [217 P.2d 1]; see *People v. Superior Court (Himmelsbach)* (1986) 186 Cal.App.3d 524, 539 [230 Cal.Rptr. 890].) Typical is this statement in *Neal v. State of California, supra*, 55 Cal.2d at

page 20: "Petitioner, therefore, can only be punished for the more serious offense, which is attempted murder."

The lead opinion claims support in *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370], in which the trial court in fact imposed sentence on the lesser offense, and stayed that for the greater. We reversed both convictions because of instructional error. In remanding the matter, we stated that if defendant is again convicted of either or both offenses, to avoid penalizing him for appealing, the court may not impose a greater sentence than before. (*Id.* at p. 459.) We did not discuss the propriety of the original sentence, but defendants argue that by prohibiting a greater sentence after retrial, we "appear[] to have sanctioned a trial court's imposition of the less severe among possible double punishments." (*People* v. *Wesley* (1970) 10 Cal.App.3d 902, 912 [89 Cal.Rptr. 377], disapproved on other grounds in *People* v. *Hansen* (1994) 9 Cal.4th 300, 316 [36 Cal.Rptr.2d 609, 885 P.2d 1022].)

The simple, yet complete, response to both sides' citation to our cases, and the lead opinion's reliance on *People* v. *Hood, supra,* 1 Cal.3d 444, is found in the venerable maxim that decisions are not authority for propositions not considered. (*Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496]; *In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553].) In *People* v. *Hood, supra,* 1 Cal.3d 444, the People might have challenged the original sentence, but they did not; they do here. In the other cases, the defendants did not argue that the greater sentence could have been stayed; they do here. "The most that can be said is that the point was in the cases if anyone had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (*Webster* v. *Fall* (1925) 266 U.S. 507, 511 [69 L.Ed. 411, 413, 45 S.Ct. 148].) As Chief Justice Marshall said long ago, the question "passed *sub silentio*, and the court does not consider itself as bound by that case [or, here, those cases]." (*United States* v. *More* (1805) 7 U.S. (3 Cranch) 159, 172 [2 L.Ed. 397, 401-402].)

With this backdrop, I review the Court of Appeal decisions. The first, *People* v. *Wesley, supra,* 10 Cal.App.3d at pages 911-912, cited only *People* v. *Hood, supra,* 1 Cal.3d 444, without independent analysis. As noted above, however, *Hood* is not dispositive because it did not consider this question.

In *People* v. *DeVaney* (1973) 33 Cal.App.3d 630, 637-638 [109 Cal.Rptr. 276] the *defendant* claimed the court erroneously imposed the lesser sentence rather than the greater. It was unclear, in the overall context, which was the

greater and which the lesser crime. The court rejected defendant's claim for several reasons, including the statement that "a trial court is not *required* to punish a defendant being sentenced on more than one conviction to the more severe penalty that may be imposed." (*Id.* at p. 639, italics in original.) It cited only *Wesley* and *Hood*, and engaged in no pertinent analysis. This brief reference in the middle of a ruling against the defendant is hardly persuasive. The third case, *People* v. *Mendevil* (1978) 81 Cal.App.3d 84, 89 [146 Cal.Rptr. 65], cited only *Wesley* and *DeVaney*, and contained no analysis.

In *People* v. *Bradley* (1981) 115 Cal.App.3d 744, 752-754 [171 Cal.Rptr. 487], the defendant contended the trial court imposed sentence on the greater offense—like here, kidnapping for robbery—under the mistaken impression it was required to. The court cited the "general rule" that the court may stay the greater offense, citing *Hood*, *DeVaney*, and *Mendevil* without analysis, but then found that rule inapplicable. It concluded that under the specific circumstances, the trial court had to impose the greater sentence. Its reasons echo my own: "[The defendant's] argument [that the court could stay the sentence for kidnapping for robbery and impose the one for a lesser crime], if accepted, would result in the following: Where a prosecutor elects to charge a defendant with a single crime, for example, kidnapping for robbery, and where instructions on lesser offenses are not proper, a conviction would require imposition of a life sentence with possibility of parole. If, however, the prosecutor charges multiple offenses, such as the case here, the ostensibly more culpable criminal obtains the benefit of judicial discretion which somehow gives the court the power to finesse the mandated prison sentence for the most serious offense, i.e., the kidnapping for robbery pending completion of one of the lesser sentences. We are unwilling to accept this illogical result which frustrates the clear intent of the Legislature." (*People* v. *Bradley, supra*, 115 Cal.App.3d at p. 753.)

*People* v. *Avila* (1982) 138 Cal.App.3d 873, 879 [188 Cal.Rptr. 754] and *People* v. *Barela* (1983) 145 Cal.App.3d 152 [193 Cal.Rptr. 257] merely relied upon previous cases with no analysis. In *People* v. *Smith* (1985) 163 Cal.App.3d 908, 914, footnote 10 [210 Cal.Rptr. 43], the court only cited *Avila* while at the same time ordering imposition of the more *severe* sentence. *People* v. *Cole* (1985) 165 Cal.App.3d 41, 53 [211 Cal.Rptr. 242], only cited *Avila* in rejecting the *defendant*'s claim the court had to impose the supposed longer sentence. There, imposing what the defendant claimed was the longer sentence would have resulted in an overall shorter term because an enhancement could not have been imposed.

After *Cole* came *People* v. *Superior Court* (*Himmelsbach*), *supra*, 186 Cal.App.3d 524, which contained the first independent analysis of the merits

of this question. It *supports* my position, and concludes, as do I, that section 654 was "meant to ensure against multiple punishment for an indivisible transgression," not to "provide courts with discretion to avoid imposition of the punishment prescribed for the most egregious offense of which the defendant stands convicted." (186 Cal.App.3d at p. 537.)

Then came *People* v. *Salazar* (1987) 194 Cal.App.3d 634 [239 Cal.Rptr. 746], which disagreed with *Himmelsbach*. *Salazar* contains the first analysis of the merits of the issue by a court finding discretion to impose the lesser sentence. As set forth above, all previous cases merely cited *Hood* or earlier cases in the line, often while rejecting arguments by the defense. The lead opinion finds persuasive *Salazar*'s discussion that the "court should impose sentence on the offense which is most appropriate for the defendant's conduct and not simply the one carrying the greatest penalty. Only in this way will a defendant's punishment 'be commensurate with his culpability' and the purpose of Penal Code section 654 fulfilled." (*People* v. *Salazar*, *supra*, at p. 639; see lead opn., *ante*, at p. 8.) I repeat what I said before. A person who commits two crimes is not less culpable than if that person had committed only one of those two crimes. Someone who kidnaps for robbery and then also robs is not less culpable than if that person had not actually robbed.

The most thorough discussion of the cases is found in Justice Baxter's opinion in *People* v. *Thompson* (1989) 209 Cal.App.3d 1075, 1078-1086 [257 Cal.Rptr. 658]. After taking a "rather exhaustive trip through 30 years of citations," the *Thompson* court concluded that our decisions stating the procedure on appeal when section 654 is violated do not necessarily limit the trial court's discretion in the first place, and that although reliance on *People* v. *Hood*, *supra*, 1 Cal.3d at page 459, "seems more reasonable," even that case does not "firmly support[]" the conclusion that the trial court has discretion to impose the lesser sentence. (209 Cal.App.3d at p. 1085.) The court ultimately found it "unnecessary in this case to choose between *Salazar* and *Himmelsbach*." (*Ibid.*)[1]

The final decision is *People* v. *Thompson* (1992) 7 Cal.App.4th 1966, 1975 [10 Cal.Rptr.2d 15], which merely cited previous cases with no analysis.

We thus find that of all these cases, only three contain an analysis of the issue rather than mere reliance on *Hood* or earlier decisions: (1) *People* v.

---

[1]The lead opinion asserts that *People* v. *Thompson*, *supra*, 209 Cal.App.3d at page 1085, "concluded . . . : 'If the trial court had abused its discretion in *Hood*, the Supreme Court would not have placed such a limitation on the maximum sentence on retrial.' " (Lead opn., *ante*, at p. 7.) In fact, *Thompson* merely described that as the rationale of *People* v. *Wesley*, *supra*, 10 Cal.App.3d 902. *Thompson* found reliance on *Hood* "not firmly supported," and expressly did not choose between the conflicting cases. (209 Cal.App.3d at p. 1085.)

*Superior Court (Himmelsbach), supra,* 186 Cal.App.3d 524, which supports my view; (2) *People* v. *Salazar, supra,* 194 Cal.App.3d 634, which reaches the opposite conclusion; and (3) *People* v. *Thompson, supra,* 209 Cal.App.3d 1075, which did not choose between them. An additional case, *People* v. *Bradley, supra,* 115 Cal.App.3d 744, refused to apply the rule of the earlier cases for reasons that support my view. This authority is far from conclusive. This court has the right, indeed the obligation, to consider the merits of the controversy itself for the first time, and to reach its own conclusion.

## V.

I do not suggest that courts have no discretion in sentencing, or that the facts of the individual case may not be considered in deciding how long the defendant will remain incarcerated. Courts still have the usual discretion to impose concurrent or consecutive sentences, or to choose the upper, middle or lower term when that is at issue, or to make the myriad other sentencing choices they are required to make. If, as for kidnapping for robbery, the prescribed sentence is life with the possibility of parole, the Board of Prison Terms may consider the individual facts in exercising its discretion whether and when to grant parole. But this discretion must be within the range of punishments the Legislature has prescribed for the defendant's criminal conduct.

Subject to constitutional limits not relevant here, the Legislature has the exclusive authority to define crimes and prescribe punishment. (*People* v. *Tanner* (1979) 24 Cal.3d 514, 519, fn. 3 [156 Cal.Rptr. 450, 596 P.2d 328]; *People* v. *Superior Court (Himmelsbach), supra,* 186 Cal.App.3d at p. 537.) The lead opinion asserts that the crime of this case was "essentially a robbery by youthful defendants." (Lead opn., *ante,* at p. 8.) A robbery it surely was; it was *also* beyond question a kidnapping. There is no claim that the kidnapping charge was improper or the conviction is factually unsupported. The Legislature has prescribed the punishment for both kidnapping for robbery and robbery, and determined the former crime to be the more serious. When the lead opinion states that this was merely a robbery and should not be punished as seriously as a kidnapping for robbery, it is either invading the jury's function by second-guessing the guilty verdict for the kidnapping, or the legislative function by disagreeing that kidnapping for robbery is the more serious crime, or both. Either is improper.

Contrary to the implication of the lead opinion (lead opn., *ante,* at p. 8), I do not argue that the court must "mechanically" impose sentence on any particular offense. The overall sentence must be considered. Sentencing rules are complex; enhancements and other factors may properly play a role

in deciding which sentence to impose and which to stay. I would merely hold that a court may not manipulate the punishments it chooses to stay and not stay under section 654 so as to impose a lesser total sentence than would have been possible if the defendant had committed and been convicted of fewer crimes.

The only difference between the majority and me—and it is momentous —is that I would not allow a court to impose a sentence lower than the statutory minimum solely because the defendant committed *additional* crimes.

## VI.

In this particular case, I concur in the result because I find no violation of what I view the rule to be. Again, I do not argue the court must mechanically impose one sentence or the other, only that the overall sentence must not be lower than the legislatively mandated minimum for any of the crimes.

Defendant Norrell, who did not personally use a firearm, was eligible for probation, so the Legislature did not require imposition of any actual prison sentence at all. The six-year, eight-month prison sentence he did receive was not, therefore, lower than the statutory minimum.

The question regarding defendant Lau is more complex. Because he "personally used a firearm," both the kidnapping for robbery and the robbery convictions made him ineligible for probation. (Pen. Code, § 1203.06, subd. (a)(1)(B), (D).) The sole prescribed sentence for kidnapping for robbery is life with the possibility of parole. (Pen. Code, § 209, subd. (b).) At the time of the crime, the prescribed additional sentence for the firearm use enhancement was three, four or five years. (Pen. Code, former § 12022.5, subd. (a).) Thus, the minimum sentence for the kidnapping for robbery crime is life plus three years. That establishes a floor below which the court may not go, no matter how many other crimes the defendant committed.

To determine whether the sentence imposed in this case is lower than this floor, we face the difficulty of comparing an indeterminate sentence with the actual determinate sentence. To my mind, the only fair and reasonable way to do this is to compare the theoretical minimum period of custody for the indeterminate offense with the actual determinate term. This may not be

entirely accurate; indeed, as the lead opinion suggests (lead opn., *ante*, at pp. 9-10), it may operate to a defendant's advantage, because it does not take into account the variable of behavior and other credits. A determinate term may, and often does, result in actual confinement shorter than the prescribed term. But a sentencing court has no way of quantifying this factor. I am thus content to compare the minimum period of confinement of an indeterminate term with the actual determinate term.

When the sentence is life with the possibility of parole, the minimum period of confinement before being eligible for parole is seven years. (Pen. Code, § 3046.) Thus, the effective minimum term is seven years for the life sentence on the substantive offense plus the lower term of three years for the enhancement, for a total of ten years. Although the sentence the court imposed for the lesser offenses could have been lower than 10 years, and thus could have been an abuse of discretion, this one was not. The court imposed the upper term for the robbery plus the upper term for the enhancement, and made the sentence for the Vehicle Code violation consecutive. The resultant overall sentence was ten years, eight months. I therefore concur in the result in this particular case.

CONCLUSION

Although I hope society's miscreants do not hear it, the message the majority sends is unmistakable: if you commit a crime, and hope to avoid the punishment the Legislature has prescribed for that crime, be sure also to commit a lesser crime along the way. Woe to the person who kidnaps intending to rob but then decides not to actually rob. To that person, leniency is forbidden. Only if the victim is actually robbed may the defendant obtain a reduced sentence.

I agree with the lead opinion that it is "the Legislature's role to amend statutes, not this court's." (Lead opn., *ante*, at p. 10.) But it is this court's role, indeed duty, to give a statute a rational interpretation in the context of the entire system of law of which it is a part. The majority does not do so. I also agree that the Legislature may modify the rule any time it chooses. (Lead opn., *ante*, at p. 9; conc. opn., *ante*, at p. 12.) Until today there was no need to amend section 654 regarding this issue. Now there certainly is. I hope the Legislature will heed my call, and amend that statute to make clear what should have been clear all along: when a person commits multiple crimes, the court may not manipulate the sentences to be stayed and not stayed so as to impose a lower overall sentence than the *minimum* the

Legislature has decreed for any of those crimes. Additional criminality must never be rewarded.

Kennard, J., and George, J., concurred.