Filed 9/12/16  P. v. Marshall CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT JACK MARSHALL,<br><br>    Defendant and Appellant. | G051727<br><br>(Super. Ct. No. 13CF0717)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed in part, reversed in part, and remanded.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Robert Jack Marshall of attempted carjacking, assault, and battery. The trial court sentenced Marshall to prison for 10 years. On appeal, Marshall maintains his carjacking conviction must be reversed because the trial court refused to give the pinpoint instruction he requested during trial. Alternatively, he maintains the *suspended* sentences for the assault and battery convictions should be stayed pursuant to Penal Code section 654.[1] We find his first claim lacks merit but his second contention is correct and requires that we reverse the sentencing portion of the judgment to permit the trial court to impose and then stay the assault and battery convictions.

## I

On his lunch break, Alberto Mendoza walked to his car parked on South Bristol Street in Santa Ana. Mendoza had a valuable GPS attached to the inside of his windshield in plain view. As Mendoza attempted to unlock his car door, Marshall approached and stood nine or ten feet way. He asked Mendoza for a cigarette. Mendoza responded he neither smoked nor had any cigarettes. Mendoza recalled Marshall stared at him, his face was red, and his expression "scrunched up." Mendoza sensed Marshall "looked very suspicious and hasty to make a move."

When Mendoza resumed trying to unlock his car, Marshall ran towards him and, using his shoulder, shoved Mendoza away from the door. Marshall's 170-pound body collided with Mendoza's 140 pounds, causing him to stumble while attempting to regain balance.

Marshall grabbed the keys that were still in the door lock, and he tried to unlock the car. He experienced some difficulty because the car door had a unique counter-clockwise unlocking mechanism.

Mendoza decided to fight back. From six feet away, he charged towards Marshall and using his shoulder shoved the culprit away from his car. The two men

---

[1] All further statutory references are to the Penal Code.

2

physically struggled for a few seconds in front of the car until Marshall punched Mendoza in the face. The blow sent Mendoza away from Marshall, but he was close enough to kick Marshall's abdomen. Angered, Marshall approached Mendoza again, who moved farther away. Mendoza told Marshall to "back off" and that he did not want to lose his job.

Marshall took a fighting stance with his fists raised and continued moving towards Mendoza, who repeatedly asked him to back off and said he did not want any trouble. Eventually, Marshall put his hands down to his sides and resumed staring at Mendoza.

After a few moments, Mendoza tried to walk around Marshall to reach his car door. Marshall stated, "'Oh, you're trying to get back on me, trying to get back on me.'" He resumed his fighting stance, moved towards Mendoza, and took a swing at Mendoza but missed his intended target. Mendoza repeated he did not want to fight. Marshall put his arms down to his sides and stared at Mendoza for a moment before walking away to a nearby restaurant.

Mendoza called the police and spoke to Santa Ana Police Department Sergeant Don Humphrey about the incident. Humphrey located Marshall shortly after the incident near a CVS pharmacy approximately one block from where the attack occurred. As Humphrey approached Marshall, he changed the direction in which he was walking and walked around a bus. When Humphrey asked Marshall to stop so they could talk, he complied. Marshall told Humphrey he asked somebody for a cigarette and the "guy wanted to fight him."

An amended information charged Marshall with attempted carjacking (§§ 664, subd. (a), 215, subd. (a); count 1), assault (§ 240; count 2), and battery (§ 242; count 3). It was further alleged Marshall had a prior strike conviction (§§ 667, subds. (d) & (e)(1), 1170.12, subds. (b) & (c)(l)), and had served a prior prison term (§ 667.5, subd. (b)).

3

*Defense Case*

Richard Letierri, a forensic psychologist, testified as an expert for Marshall. Letierri evaluated and interviewed Marshall. He reviewed police reports for the present case and numerous medical records, and consulted with Marshall's psychiatrist and the person who conducted a previous psychological evaluation. He examined records from a 2002 commitment to College Hospital and Marshall's medication history. Letierri stated testing indicated Marshall had a very low verbal IQ, suggesting difficulty using language effectively.

Letierri opined Marshall had "Bipolar I Disorder" (a more serious form of bipolar disorder), social anxiety disorder, avoidant personality disorder, and suffered from poly-substance abuse. According to Letierri, these disorders caused Marshall to experience periods of depression, episodes of mania, episodes of irritability, racing thoughts, impulsiveness, distress, interpersonal and social problems, and emotional instability, and caused him to perceive that other people were "messing with his head." Letierri explained having these disorders frequently leads to drug abuse as a means of self-medicating to alleviate the symptoms. Marshall was using methamphetamine, marijuana, and alcohol. Letierri opined Marshall's tendency to be irrational and misunderstand people could lead to aggressive confrontations.

When asked a hypothetical question that closely mirrored the facts of the present case, Letierri was unsure what the motive would be for the altercation. Letierri explained it was difficult to discern what a person having Marshall's many mental disorders was thinking at any particular time. Letierri stated a hypothetical person having those disorders could, or could not be, experiencing a manic or bipolar episode at the time of the altercation.

A jury convicted Marshall on all counts and he admitted the prior conviction allegations. The trial court sentenced Marshall to prison for 10 years,

4

consisting of five years on count 1 and five years for the enhancements. The trial court suspended sentencing on counts 2 and 3.

## II

Marshall contends the trial court erred in rejecting his proposed modified flight instruction, which added to the standard flight instruction, CALCRIM No. 372, language stating the jury could infer consciousness of innocence based on a defendant's ultimate decision not to flee from the crime scene. He requested the following instruction: "If you find that the defendant did not flee after the alleged crime was committed, or after he was accused of committing that crime, that conduct may show that he was not aware of any guilt. If you conclude that the defendant did not flee, that evidence may prove that he is not guilty."[2] Marshall maintains this pinpoint instruction is supported by evidence he only walked a short distance away after the incident with Mendoza and he cooperated with the police in his detention and arrest.

Marshall contends the trial court's refusal to give his requested instruction amounted to a failure to instruct on the defense theory of the case and denied him the right to due process and a fair trial. He acknowledges *People v. Staten* (2000) 24 Cal.4th 434 (*Staten*), *People v. Green* (1980) 27 Cal.3d 1 (*Green*),[3] and *People v. Williams* (1997) 55 Cal.App.4th 648 (*Williams*), hold due process does not require instruction on the absence of flight. However, he argues the *Williams* court specifically stated a trial court could give such an instruction in the appropriate circumstances. (*Williams, supra,*

---

[2] The trial court rejected Marshall's proposed modified instruction and gave the following standard flight instruction: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself." (CALCRIM No. 372.)

[3] Disapproved on other grounds in *People v. Hall* (1986) 41 Cal.3d 826, 834, fn. 3.

5

55 Cal.App.4th at p. 652 [ruling would not "proscribe the broad discretion of the trial court in giving an appropriate instruction on the absence of flight when supported by the evidence and of sufficient relevance in the context of the case"].)

Based on this ruling, Marshall maintains the absence of flight instruction is not an incorrect statement of law and should have been given in this case. Marshall contends the court's refusal to give the instruction was prejudicial error because (1) substantial evidence supported giving the requested non-argumentative, non-duplicative instruction, (2) there was a close question on the issue of specific intent, and (3) the prosecutor focused on the evidence of flight in closing argument. We find no abuse of discretion.

A. *Applicable Legal Principles*

The trial court is required to instruct the jury properly on all points of law applicable to the case. (§ 1093, subd. (f); *People v. Breverman* (1998) 19 Cal.4th 142 159-160.) "The trial court must instruct, even in the absence of a request, on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case. [Citation.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 112.) As a general rule, a defendant has the right to an instruction that pinpoints the theory of the defense, upon request, when appropriate. (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.) However, the trial court need not give a pinpoint instruction if it is argumentative, duplicates other instructions, or is not supported by substantial evidence. (*People v. Marshall* (1997) 15 Cal.4th 1, 39-40.)

The California Supreme Court has held a trial court is not required to instruct on the absence of flight, even if requested and even if there is evidence to support it. Specifically, in the *Staten* opinion, the Supreme Court explained that in its prior opinion *Green, supra*, 27 Cal.3d at pages 39 through 40, it held "that refusal of an instruction on absence of flight was proper and was not unfair in light of . . . section 1127c." "We observed that such an instruction would invite speculation; there are

6

plausible reasons why a guilty person might refrain from flight. [Citation.] Our conclusion therein also forecloses any federal or state constitutional challenge based on due process." (*Staten, supra*, 24 Cal.4th at p. 459; see also *Williams, supra*, 55 Cal.App.4th at p. 652.) We are bound to follow the holdings in *Green* and *Staten.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Section 1127c requires the court to instruct the jury on flight, when supported by the record, as showing consciousness of guilt, and states that "[n]o further instruction on the subject of flight need be given."[4] There is no similar statutory requirement that the court must instruct the jury on the absence of flight.

B. *Analysis*

We begin our analysis by noting Marshall does not challenge the trial court's decision to give the consciousness-of-guilt flight instruction based on evidence Marshall left the parking lot after the incident and walked 300 to 400 yards away. He also deviated from his path, and walked around a bus, when he saw an officer had spotted him and was approaching. (*People v. Clem* (1980) 104 Cal.App.3d 337, 344 [error to give instruction where evidence of flight is lacking].) The prosecutor appropriately requested the flight instruction and argued the jury should consider the fact Marshall "meandered away from the area." He suggested to the jury that Marshall could have thought "'maybe the police aren't going to find me over at the CVS.'"

Marshall focuses on a single possible inference that can be made from the evidence that could have supported the reverse flight instruction, i.e., Marshall having a

_____

[4] Section 1127c explains that: "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows: [¶] The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine. [¶] No further instruction on the subject of flight need be given."

7

combination of mental illnesses did not flee because he did not believe he had done anything wrong. He points out the *Williams* court recognized considerations of due process do not require a trial court to instruct on the absence of flight, but a trial court may, in its discretion, give "an appropriate instruction on the absence of flight when supported by the evidence and of sufficient relevance in the context of the case." (*Williams, supra*, 55 Cal.App.4th at p. 652.). He asserts there "was no legitimate reason to refuse to provide the requested pinpoint instruction . . . [that correctly] drew the jury's attention to the relationship between the prosecutor's duty to prove guilt beyond a reasonable doubt, and the defense of mental impairment negating an intent to steal Mendoza's vehicle."

The Attorney General does not offer any legal analysis on the above issue. Instead, the Attorney General provides us with a summary of generally applicable legal authority on pinpoint instructions and a brief discussion of two Supreme Court cases. The Attorney General simply asserts Marshall failed to say why this court should not follow the binding precedent of *Staten, Green,* and *Williams*. But that is clearly not Marshall's argument on appeal. His argument is that the relevant and binding case authority does not forbid the trial court from giving a reverse flight instruction in appropriate cases, and there would be no harm in giving it in this case. We are dismayed to see the Attorney General completely failed to address this argument. We will take up the "laboring oar" to analyze this argument.

We find the *Williams* case instructive. Defendant was convicted of second degree burglary of a vehicle. (*Williams, supra,* 55 Cal.App.4th at p. 649.) "It was uncontested at trial that [defendant] did not try to flee when the arresting officer approached him. Indeed, in response to the officer's request, [defendant] opened the gate to the garage area to let the officer in." (*Id.* at p. 651.) The court rejected defendant's contention he was denied due process and equal protection by the trial court's failure to instruct sua sponte on the absence of flight (relying on *Wardius v. Oregon* (1973) 412

8

U.S. 470 ["due process requires reciprocal discovery rights for both prosecution and defense"] (*Wardius*)). (*Williams, supra,* 55 Cal.App.4th at p. 651.)

The court in *Williams* adopted the Supreme Court's analysis in the *Green* case. "[T]here is no right to an instruction on the absence of flight. *Green* explained that the absence of flight can give rise to several inferences unrelated to a defendant's alleged innocent state of mind. For example, in the present case, [defendant's] absence of flight and his opening of the gate as asked constituted mere compliance with a lawful police request. Since it is reasonable to expect that all persons, whether guilty or innocent, will cooperate with a lawful police request, no compelling inference of innocence arises from such cooperation. It is also reasonable to conclude that [defendant], despite his guilt, was literally fenced in and had little choice but to cooperate with the officer. Moreover, even assuming the absence of flight may be relevant to some extent, it is often, as here, 'so laden with conflicting interpretations, that its probative value on the issue of innocence is slight.' [Citation.]" (*Williams, supra,* 55 Cal.App.4th at pp. 651-652.)

The *Williams* court observed, "Flight is by its nature an active, conscious activity which readily and logically tends to support the inference of consciousness of guilt, as described in [the standard jury instruction]. Indeed, the inference of consciousness of guilt from flight is one of the simplest, most compelling and universal in human experience. [Citation.] The absence of flight, on the other hand, is far less relevant, more inherently ambiguous and 'often feigned and artificial.' [Citations]." (*Williams, supra*, 55 Cal.App.4th at p. 652.) Consequently, "flight and the absence of flight are not on similar logical or legal footings, [and] the due process notions of fairness and parity in *Wardius* are inapplicable." (*Id.* at p. 653.)

The court in *Williams* recognized the *Green* opinion did not address the same constitutional claim focusing on the lack of parity with the requirement of a flight instruction when supported by the evidence. However, it found the *Green* case's analysis of the nature of absence of flight evidence relevant and instructive. "The absence of flight

9

is of such marginal relevance that such evidence is often not even admissible. *People v. Montgomery* (1879) 53 Cal. 576, discussed in *Green*, upheld the trial court's preclusion of evidence that a suspect while confined in jail awaiting trial had the opportunity to escape but declined to do so. The *Montgomery* court 'held in effect that evidence that a suspect did *not* flee when he had the chance was of little value as tending to prove innocence because there are plausible reasons why a guilty person might also refrain from flight.' [Citation.] [¶] On the other hand, the same cannot be said when a suspect flees the scene of a crime or flees after being accused of a crime. Although flight may also be subject to arguably innocent interpretation in certain contexts, and [CALCRIM No. 372] permits the jury to accord it appropriate weight under the circumstances, flight is significantly different than the absence of flight." (*Williams, supra,* 55 Cal.App.4th at p. 652.)

Based on the above reasoning the court held, "[W]e decline the invitation to hold as a matter of law that due process, pursuant to the reasoning in *Wardius* . . . requires such an instruction. . . . [¶] In contrast to the notion of reciprocal discovery rights, there is no fundamental unfairness in not requiring an instruction on the absence of flight. As previously discussed, unlike the flight of an accused from the scene of a crime or after accusation of a crime, the absence of flight presents such marginal relevance it is usually not even admissible. [Citation.]" (*Williams, supra,* 55 Cal.App.4th at p. 652.) "Since flight and the absence of flight are not on similar logical or legal footings, the due process notions of fairness and parity in *Wardius* are inapplicable." (*Ibid.*)

In holding there was no sua sponte duty to instruct on the absence of flight, the court was careful not to limit a trial court's discretionary authority to give the instruction. It stated, "Nonetheless, we do not intend to proscribe the broad discretion of the trial court in giving an appropriate instruction on the absence of flight when supported by the evidence and of sufficient relevance in the context of the case. (*Williams, supra,* 55 Cal.App.4th at p. 652.)

10

The holding in the *Williams* case was upheld by the Supreme Court in *Staten, supra,* 24 Cal.4th at page 459. Our Supreme Court agreed the trial court did not have a sua sponte duty to instruct that the jury might consider defendant's absence of flight as a factor tending to show innocence. The Supreme Court held, "We discern no error. In [*Green, supra*, 27 Cal.3d at pages 39 through 40 and footnote 26], we held that refusal of an instruction on absence of flight was proper and was not unfair in light of . . . section 1127c. We observed that such an instruction would invite speculation; there are plausible reasons why a guilty person might refrain from flight. [Citation.] Our conclusion therein also forecloses any federal or state constitutional challenge based on due process. [Citing *Williams, supra*, 55 Cal.App.4th at pp. 652-653].)" (*Staten, supra,* 24 Cal.4th at p. 459.)

Based on the above authority, we disagree with Marshall's contention there was "no legitimate reason" for the trial court to refuse giving the absence of flight instruction in this case. Although there is evidence Marshall did not flee the scene and was cooperative during his arrest, the probative value of this evidence on the issue of innocence is slight for the same reasons stated in the *Williams* and *Green* opinions, and for the additional reason there was undisputed expert evidence Marshall's thought process could not be deciphered due to the nature of his many mental disorders. Marshall only focuses on select features of his mental disorders, such as impulsiveness and contorted perceptions, to advocate his innocent intent in this case. However, it is just as likely the lack of flight and cooperation related to other factors. Consequently, the ambiguity inherit in the absence of flight evidence is heightened, not lessened, by the many features of Marshall's mental disorders. Because the absence of flight evidence in this case had an entirely ambiguous significance, such an instruction would only invite speculation by the jury. In light of this record, it cannot be said the court abused its discretion in refusing to modify the flight instruction.

11

# III

Marshall argues that if the carjacking conviction (count 1) is not reversed, the suspended sentences for his assault and battery convictions (counts 2 and 3) should be imposed and stayed pursuant to section 654. The Attorney General agrees the assault and battery were incidental to the carjacking and Marshall had only one intent and objective, i.e., to steal the car. We agree sentencing on the assault and battery convictions in this case should have been imposed and stayed (rather than suspended) pursuant to section 654.

Ordinarily where imposition of sentence is *suspended* a defendant is placed on probation. "There is a legal distinction between 'suspending' a sentence and 'staying' it. In the criminal sentencing context, the phraseology 'stay of execution' is utilized where full execution of sentence is prohibited by law and must be avoided. (See, e.g., § 654 [multiple punishment prohibited]; § 1170.1, subd. (a) [computation of consecutive terms]; § 1170.1, subd. (g) [double the base term limitation]; Cal. Rules of Court, rules 447, 449.) In contrast, the words 'suspension of execution' are employed in conjunction with a grant of probation, a conditional and revocable release into the community. (See, e.g., §§ 1203, 1203.1, 1203.2, 1203.3; Cal. Rules of Court, rules 433, 435.) While at one time the terms may have been used indiscriminately [citations], they have developed into terms of art." (*People v. Superior Court (Himmelsbach)* (1986) 186 Cal.App.3d 524, 536, fn. 8, overruled on another point in *People v. Norrell* (1996) 13 Cal.4th 1, 7, fn. 3.) Because the court did not place Marshall on probation and imposed a sentence for the carjacking conviction, suspending sentencing on the two other convictions was improper. The matter must be remanded with directions for the court to impose and *stay* imposition of the sentences on the assault and battery convictions.

IV

The judgment of conviction is affirmed. The portion of the judgment regarding sentencing is reversed and the matter is remanded with directions to the trial court to impose and stay sentence on counts 2 and 3 (the assault and battery convictions). The trial court is directed to amend the abstract of judgment to reflect defendant's sentences on counts 2 and count 3 are stayed pursuant to section 654, and to transmit a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation Division of Adult Operations.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


THOMPSON, J.